**BURSOR & FISHER, P.A.**
Brittany S. Scott (State Bar No. 327132)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: bscott@bursor.com
        jwilner@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: 646-837-7150
Facsimile: (212) 989-9163
E-Mail: pfraietta@bursor.com

**DRURY LEGAL, LLC**
Scott R. Drury (State Bar No. 355002)
6 Carriage Lane
Highwood, Illinois 60040
Telephone: (312) 358-8225
E-mail: scott@drurylegal.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, individually and on behalf all others similarly situated,<br><br>                Plaintiff,<br><br>   vs.<br><br>CALL-ON-DOC, INC.,<br><br>                Defendant. | Case No.  **'24CV2095 GPC KSC**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jane Doe ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Call-On-Doc, Inc. ("Defendant" or "Call-On-Doc"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a class action lawsuit brought on behalf of all U.S. residents who have accessed and used www.callondoc.com (the "Website"), a website Defendant owns and operates.

2.      Defendant aids, employs, agrees, and conspires with Google and TikTok (together, the "Third Parties") to intercept communications sent and received by Plaintiff and Class Members, including communications containing protected medical information.  Plaintiff brings this action for legal and equitable remedies resulting from these illegal actions.

## PARTIES

### *Defendant*

3.      Defendant Call-On-Doc, Inc. is a Texas corporation with its principal place of business at 8355 Walnut Hill Lane, Dallas, Texas 75231. Defendant owns and operates the Website.

### *Plaintiff*

4.      Plaintiff Jane Doe is a natural person and citizen of California, residing in San Diego, California.

5.      Plaintiff visited the website several times in 2023 and 2024, including as recently as March 2024, to seek treatment for various health conditions, including an upper respiratory infection. As part of her treatment process, as is the case with all purchases and bookings on the Website, Plaintiff selected the condition for which she was seeking treatment and answered a series of questions related to her physical health. Plaintiff provided the information with the understanding that it would be

1

reviewed by a doctor in order for that doctor to treat her symptoms and, if necessary, prescribe medication.

6.    Pursuant to the systematic process described herein, Defendant aided and assisted the Third Parties with intercepting Plaintiff's communications, including those that contained personally identifiable information ("PII"), protected health information ("PHI"), and related confidential information. Defendant aided and assisted these interceptions without Plaintiff's knowledge, consent, or express written authorization.

7.    After seeking treatment for an upper respiratory infection on the Website, Plaintiff began receiving targeted advertisements related to pneumonia treatment on Google and other internet sites.

8.    By failing to receive the requisite consent, Defendant breached its duties of confidentiality and unlawfully disclosed Plaintiff's PII and PHI.

## JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000, exclusive of interest and costs, and at least one member of the proposed class is a citizen of a state different from at least one Defendant.

10.    This Court has personal jurisdiction over Defendant because the Website collected and disseminated the PII and PHI giving rise to this lawsuit in this District, Defendant conducts substantial business in this District, Defendant's Website allows California residents to purchase treatment and medications in California, and the conduct giving rise to this action arises out of and relates to that business.

11.    Defendant derives substantial revenue from advertising it shows to, and directs at, its users in the state of California. Through the collection of users' data, as described above and below, Defendant is able to hyper-target users with advertising.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in this District, and Plaintiff resides in this District.

## FACTUAL ALLEGATIONS

## I.    BACKGROUND OF THE CALIFORNIA INFORMATION PRIVACY ACT ("CIPA")

13.     The CIPA, Cal. Penal Code § 630, *et seq.*, prohibits aiding or permitting another person to willfully—and without the consent of all parties to a communication—read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from or received at any place within California.

14.     To establish liability under Cal. Penal Code § 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,

Or

Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,

Or

Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

15.    The applicability of Cal. Penal Code Section 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the internet, and email. *See Matera v. Google Inc.*, 2016 WL 8200619, at \*21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc.*, 2006 WL 3798134, at \*5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' internet browsing history).

16.    Under Cal. Penal Code § 637.2, Plaintiff and Class Members may seek injunctive relief and statutory damages of $5,000 per violation.

## II.    BACKGROUND OF THE CALIFORNIA CONFIDENTIALITY OF MEDICAL INFORMATION ACT ("CMIA")

17.    Pursuant to the California Confidentiality of Medical Information Act ("CMIA"), a "provider of health care . . . shall not disclose medical information regarding a patient of the provider of health care . . . without first obtaining an authorization, except as provided in subdivision (b) or (c)." Cal Civ. Code § 56.10(a).  "An authorization for the release of medical information . . . shall be valid if it:

(a) Is handwritten by the person who signs it or is in a typeface no smaller than 14-point type.

(b) Is clearly separate from any other language present on the same page and is executed by a signature which serves no other purpose than to execute the authorization.

(c) Is signed and dated . . .

(d) States the specific uses and limitations on the types of medical information to be disclosed.

(e) States the name or functions of the provider of health care, health care service plan, pharmaceutical company, or contractor that may disclose the medical information.

(f) States the name or functions of the persons or entities authorized to receive the medical information.

(g) States the specific uses and limitations on the use of the medical information by the persons or entities authorized to receive the medical information.

(h) States a specific date after which the provider of health care, health care service plan, pharmaceutical company, or contractor is no longer authorized to disclose the medical information.

(i) Advises the person signing the authorization of the right to receive a copy of the authorization."

Cal Civ. Code § 56.11

18.    Moreover, a provider of health care that maintains information for purposes covered by the CMIA is liable for negligent disclosures that arise as the result of an affirmative act—such as implementing a system that records and discloses online patients' PII and PHI.  Cal. Civ. Code § 56.36(c).  Similarly, if a negligent release occurs and medical information concerning a patient is improperly viewed or otherwise accessed, the individual need not suffer actual damages. Cal. Civ. Code § 56.36(b).

19.    "In addition to any other remedies available at law, any individual may bring an action against any person or entity who has negligently released confidential information or records concerning him or her in violation of this part, for either or both of the following: [¶] (1) . . . nominal damages of one thousand dollars ($1,000). In order to recover under this paragraph, it shall not be necessary that the plaintiff suffered or was threatened with actual damages. [¶] (2) The amount of actual

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

damages, if any, sustained by the patient." *Sutter Health v. Superior Ct.*, 227 Cal. App. 4th 1546, 1551, 174 Cal. Rptr. 3d 653, 656 (2014) (quoting Cal. Civ. Code § 56.36(b)).

**III.    DEFENDANT'S WEBSITE**

20.    Call-On-Doc is "a healthcare provider that gives patients the ability to consult with experienced doctors from the comfort of their own homes."[1]

21.    In addition to telehealth services, Call-On-Doc allows patients to order tests for "diabetes, cholesterol, thyroid, kidney and liver problems and STDs," among other things.[2]

22.    When patients visit the Website, they select the condition for which they are seeking treatment.



---

[1] *Trailblazing Telemedicine Provider CallonDoc Makes Access to Affordable Healthcare Easier with At-Home Test Kits and Free Delivery*, PR Web, https://www.prweb.com/releases/trailblazing-telemedicine-provider-callondoc-makes-access-to-affordable-healthcare-easier-with-at-home-test-kits-and-free-delivery-878261909.html.

[2] *Id.*

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

23.     Once a condition is selected, the user is prompted to answer a series of intake questions asking for personal information and information related to the patient's health and the treatment sought.



24.     On the starting pages of the questionnaire, the URL for the page includes the condition for which the patient is seeking treatment. For example, if the patient is seeking treatment for HIV exposure, the URL will be https://www.callondoc.com/en/start-now/std/hiv-exposure-pep.

25.     Patients enter a large amount of personal information into the questionnaire, including, among other things, their full name, gender, height, weight, symptoms, dates of exposure for certain contagious diseases and sexually transmitted infections, pregnancy status, breastfeeding status, medications, and surgical history.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

26.     After entering the above-described personal information and health information, the user is prompted to make an appointment (for telehealth) and enter their payment information to purchase the services or tests. When making the purchase, the patient's full name is entered with their payment information and is included in an attestation at the bottom of the page.



## IV.    OVERVIEW OF THE WIRETAPS

### A.    Google Analytics' Tracking Code

27.     The Google Analytics Tracking code is a piece of code that can be installed into websites to track page visits, button clicks, text entered into websites, and other actions taken by website visitors. The tracking code is connected to the Google Analytics platform.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

28.    According to Google, "Google Analytics is a platform that collects data from [] websites and apps to create reports that provide insights into [] business[es]."[3] Google describes these reports and insights as follows[4]:

Real-Time Reporting
- Monitor activity on your site or app as it happens.

Acquisition Reports
- See how users land on your site or app and understand the effectiveness of your marketing.
  - User Acquisition[:] Discover how users reach your site or app through different paid and organic sources.
  - Traffic Acquisition[:] See a session-based view of traffic and engagement on your site or app through different paid and organic traffic sources.

Engagement Reports
- Better understand what content drives engagement and conversions on your site or app.
  - Events Report[:] Get a detailed view of user actions, system events, or errors.
  - Conversion Report[:] See how all your marketing channels are working together to drive conversions.
  - Pages and Screen Report[:] See which web pages and app screens users engage with the most.

Monetization Reports
- See how much revenue your site or app generates whether it's from ecommerce, subscriptions, or ads.
  - Ecommerce[:] Analyze purchase activity including product and transaction information, average purchase revenue, average purchase revenue per user, and other data.
  - In-App Purchases[:] Improve your app monetization with insights about the highest performing products and subscriptions.
  - Publisher Ads[:] See ad revenue that your app generates using the Google Analytics for Firebase SDK.

---

[3] GOOGLE, HOW GOOGLE ANALYTICS WORKS, https://support.google.com/analytics/answer/12159447.

[4] GOOGLE, ANALYTICS FEATURES, https://marketingplatform.google.com/about/analytics/features/.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

29.     This gathered information is used for marketing and advertising. Specifically, Google "Analytics is designed to work seamlessly with other Google solutions and partner products" and can "unlock deeper insights into [advertising] campaign performance from Google Ads, Display & Video 360, and Search Ads 360."[5] Google Analytics integrates with Google Ads so that clients, like Defendant, can "[s]ee [] Ads data together with [] website and app performance data in the Google Ads reports in Analytics."[6] Google Analytics integrates with Display & Video 360 and Search Ads so that clients, like Defendant, can "[e]xport conversions created in Analytics[,]" "create audiences that are predicted to take [certain] actions[,]" and "use them for automated bidding" in Display & Video 360 and Search Ads.[7]

30.     Gathered information is also used for analytics. With Google Analytics, clients, like Defendant, can "apply[] Google's machine learning models, . . . analyze [] data[,] and predict future actions people may take, like making a purchase or churning."[8] Additionally, Google Analytics can "automatically detect and surface actionable insights from [gathered] data like important changes, new trends, and other growth opportunities[.]"[9] And Google can provide "[a]nswers to [marketers' q]uestions . . . in natural language[,] . . . to quickly find [] metric[s], report[s], or insights[.]"[10] Through Google Analytics' "[u]ser [e]xploration" functions, it is even possible to "[s]elect specific groups of users and drill down deeper to understand how those users engage with [a] site or app."[11]

---

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

31.     Thus, Google Analytics furnishes "a complete understanding of []
customers across devices and platforms[,] . . . [and] gives [] the tools[] . . . to
understand customer journey and improve marketing ROI."[12]

32.     As such, Google has the capacity to use the information intercepted
from the Website for its own purposes, assembling the data collected into datasets to
target users with advertising.

33.     Defendant intentionally embedded and configured Google Analytics on
all pages where users entered PII and PHI, including the pages depicted above.

34.     At relevant times, each time a Call-On-Doc patient selected a condition
for treatment or entered information into the intake portion of the Website, the
Google Analytics tracking code automatically sent a simultaneous transmission of
that information to Google. This continues to be the case.

---

[12] GOOGLE, ANALYTICS OVERVIEW, https://marketingplatform.google.com/about
/analytics/.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED



35.    Further, at relevant times, Google Analytics was configured, and continues to be configured, on each screen of the checkout process of the Website.

36.    Thus, when users entered their personal information, like their email address and telephone number, into the Website, Google simultaneously intercepted this information in real time and used it to identify the Website visitor. This continues to be the case.

37.    The image below shows a portion of the information simultaneously intercepted by Google when patients enter information into the intake questionnaire on the Website.  In addition to the PHI intercepted in the questionnaire, Google received, and continues to receive, the treatment sought and the patient's full name through the payment attestation.



38.    With respect to Plaintiff and Class Members, Google intercepted their PII, PHI and other confidential information in the manner described above in real time as the information was entered into the Website.  Google then viewed each and every piece of intercepted information, processed it, and assembled it for use in the advertising services detailed above.

39.    The purpose of this invasion of privacy is straightforward: Google collects information from Defendant's website and sends back an analysis of that

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

information, identifying website traffic and ad performance and targeting ads for specific individuals.

40.    This is valuable to Defendant because it improves the effectiveness of Defendant's advertisements, allows for the targeting of users, and provides performance information for ad campaigns.

41.    In addition to helping companies like Defendant make better use of their own customer information, Google aggregates the intercepted information with the information collected from all sites containing Google Analytics to track users across multiple websites and platforms, which increases the value of Google's advertising services when they are offered to other companies.

42.    Thus, the agreement for Defendant to aid in Google's wiretapping of Plaintiff and Class Members' PII and PHI is done for the purpose of improperly increasing the advertising efficiency and, by extension, profits of both parties.

**B.    TikTok's TikTok Pixel**

43.    TikTok offers a SaaS called "TikTok Pixel," which "helps businesses track the performance of their ads" by simultaneously sending information from the business's website to TikTok, which then uses that information to optimize ad campaigns on TikTok and across the internet.[13]

44.    The TikTok Pixel can be "plugged in" to any website, as the pixel is a piece of code that can be added to any website to capture "events" (any activity by a user that happens on a website).

45.    The TikTok Pixel is part of a package of prebuilt software tools under the "TikTok for Business" product line that allow the delivery of personalized ads. By employing TikTok to collect user information through the TikTok Pixel, websites

---

[13] "TikTok Pixel 101: What It Is & How to Use It," https://popupsmart.com/blog/tiktok-pixel.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

that procure TikTok's services can use the information to deliver more effective targeted advertisements, increasing revenue for the websites.

46.    In short, when users interact with a webpage with the TikTok Pixel installed, the TikTok Pixel collects the "Metadata and button clicks" (information about what the user clicked on—such as the specific URL address visited by the user— or text entered into the webpage), a timestamp for the event, and the visitor's IP address.[14] That information is automatically and simultaneously sent to TikTok.

47.    The "TikTok for Business" business model involves entering into voluntary partnerships with various companies and surveilling communications on their partners' websites with the TikTok Pixel.

48.    Thus, through websites that employ TikTok's services, TikTok directly receives the electronic communications that website visitors enter into search bars, chat boxes, and button selections in real time.

49.    When the TikTok Pixel is used on a website, it is not like a tape recorder or a "tool" used by one party to record the other. Instead, the TikTok Pixel involves TikTok, a separate and distinct third-party entity from the parties in the conversation, using the TikTok Pixel to eavesdrop on, record, extract information from, and analyze a conversation to which it is not a party. This is so because TikTok itself is collecting the content of any conversation. That information is then analyzed by TikTok before being provided to any entity that was a party to the conversation (like Defendant).

50.    Once TikTok intercepts website communications, it has the capability to use such information for its own purposes. TikTok's Commercial Terms of Service grant TikTok "a non-exclusive, royalty-free, worldwide, transferable, sublicensable license to access, use, host, cache, store, display, publish, distribute, modify and

---

[14] "About TikTok Pixel," https://ads.tiktok.com/help/article/tiktok-pixel?redirected=2.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

adapt [information collected from partner websites] in order to develop, research, provide, promote, and improve TikTok's products and services."[15]

51.    In practice, this means the information collected is used to: (i) analyze trends in consumer behavior based on data collected from websites across the internet that TikTok can then use when providing targeted advertising to other companies; (ii) create consumer profiles of specific users, allowing TikTok to sell future customers targeted advertising to consumers with specific profile characteristics; and (iii) develop new TikTok Business products and services, or improve pre-existing TikTok Business products and services.

52.    Defendant intentionally embedded and installed the TikTok Pixel on all pages where users entered PII and PHI, including the pages depicted above.

53.    As demonstrated below, at relevant times, the TikTok Pixel was, and remains to be, loaded on the pages of the questionnaire where the condition for which patients are seeking treatment is included in the URL. This means when the TikTok Pixel gets a "page view" event from Defendant, it also gets private information regarding patients' health.

54.    At relevant times, each time a Call-On-Doc patient visited a page on the Website, including pages where the patient's condition or treatment is included in the page URL, the TikTok Pixel automatically sent a simultaneous transmission of the URL to TikTok. This remains to be the case.

55.    In addition to intercepting the above-described URL information, at relevant times, the TikTok Pixel also intercepted and collected, and continued to intercept and collect, "hashed" versions of patients' email addresses and phone numbers.

---

[15] "TikTok For Business Commercial Terms Of Service" https://ads.tiktok.com/i18n/official/policy/commercial-terms-of-service.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED





CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



19    56.    TikTok intercepted all of the information described above from Plaintiff

20  and Class Members in real time as the information was entered into the Website.

21  TikTok then viewed each and every piece of intercepted information, processed it,

22  and assembled it into data sets to target Plaintiff and Class Members with

23  advertising.

24    57.    The purpose of this invasion of privacy is straightforward: TikTok

25  collects information from Defendant's website and sends back an analysis of that

26  information, identifying website traffic and ad performance and targeting ads for

27  specific individuals.

28

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

58.    This is valuable to Defendant because it improves the effectiveness of Defendant's advertisements, allows for the targeting of users, and provides performance information for ad campaigns.

59.    In addition to helping companies like Defendant make better use of their own customer information, TikTok aggregates the intercepted information with information collected from all sites containing the TikTok Pixel to track users across multiple websites and platforms, which increases the value of TikTok's advertising services when they are offered to other companies.

60.    Thus, the agreement for Defendant to aid in TikTok's wiretapping of Plaintiff and Class Members' PHI and PII is done for the purpose of improperly increasing the advertising efficiency and, by extension, profits of both parties.

## CLASS REPRESENTATIVE ALLEGATIONS

61.    Class Definition: Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of herself and other similarly situated individuals defined as all persons who, during the class period, had their PII or PHI improperly disclosed to third party entities, as a result of using the Website while located in California (the "Class").

62.    Plaintiff reserves the right to modify the class definition or add sub-classes as necessary prior to filing a motion for class certification.

63.    The "Class Period" is the time period beginning on the date established by the Court's determination of any applicable statute of limitations, after considering of any tolling, concealment, and accrual issues, and ending on the date of entry of judgement.

64.    Excluded from the Class is Defendant; any affiliate, parent, or subsidiary of Defendant; any entity in which Defendant has a controlling interest; any officer director, or employee of Defendant; any successor or assign of Defendant; anyone employed by counsel in this action; any judge to whom this case

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

is assigned, his or her spouse and immediate family members; and members of the judge's staff.

65.    <u>Numerosity/Ascertainability</u>.  Members of the Class are so numerous that joinder of all members would be unfeasible and not practicable. The exact number of Class Members is unknown to Plaintiff at this time; however, it is estimated that there are thousands of individuals in the Class. The identity of such membership is readily ascertainable from Defendant's records and non-party records, such as those of Google and TikTok.

66.    <u>Typicality</u>.  Plaintiff's claims are typical of the claims of the Class because Plaintiff used the Website and, as a result of Defendant's unlawful conduct, had her PII and PHI intercepted by third parties without her express written authorization or knowledge. Plaintiff's claims are based on the same legal theories as the claims of other Class Members.

67.    <u>Adequacy</u>.  Plaintiff is fully prepared to take all necessary steps to represent fairly and adequately the interests of the Class Members. Plaintiff's interests are coincident with, and not antagonistic to, those of the members of the Class. Plaintiff is represented by attorneys with experience in the prosecution of class action litigation generally and in the emerging field of digital privacy litigation specifically. Plaintiff's attorneys are committed to vigorously prosecuting this action on behalf of the members of the Class.

68.    <u>Common Questions of Law and Fact Predominate/Well Defined Community of Interest.</u>  Questions of law and fact common to the members of the Class predominate over questions that may affect only individual members of the Class because Defendant has acted on grounds generally applicable to the Class. Such generally applicable conduct is inherent in Defendant's wrongful conduct. Questions of law and fact common to the Class includes:

(a)    Whether Defendant intentionally tapped the lines of internet communication between patients and their medical provider;

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

(b)     Whether Defendant's Website contains code that permits third parties, such as Google and TikTok, to intercept patients' PII, PHI, and related communications;

(c)     Whether Google and TikTok are third-party eavesdroppers;

(d)     Whether Plaintiff's and Class Members' communications via the Website and the resultant interceptions thereof constitute an affirmative act of communication;

(e)     Whether Defendant's conduct, which allowed Google and TikTok—unauthorized persons—to view Plaintiff's and Class Members' PII and PHI, resulted in a breach of confidentiality;

(f)     Whether Defendant violated Plaintiff's and Class Members' privacy rights by using third-party technology, such as the Google Analytics, and the TikTok Pixel, to allow third parties to intercept patients' online communications along with information that uniquely identified the patients;

(g)     Whether Plaintiff and Class Members are entitled to damages under CIPA, the CMIA, or any other relevant statute; and

(h)     Whether Defendant's actions violate Plaintiff's and Class Members' privacy rights as provided by the California Constitution and common law.

69.     <u>Superiority.</u>  Class action treatment is a superior method for the fair and efficient adjudication of the controversy. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweighs potential difficulties in management of

21

this class action. Plaintiff knows of no special difficulty to be encountered in litigating this action that would preclude its maintenance as a class action.

## COUNT I
### Violation of the California Invasion of Privacy Act
### Cal. Penal Code § 631

70.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein and brings this count individually and on behalf of the members of the Class.

71.     The California Invasion of Privacy Act ("CIPA") is codified at Cal. Penal Code §§ 630 to 638. CIPA begins with its statement of purpose – namely, that the purpose of CIPA is to "protect the right of privacy of the people of [California]" from the threat posed by "advances in science and technology [that] have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications . . . ." Cal. Penal Code § 630.

72.     A person violates California Penal Code § 631(a), if:

> by means of any machine, instrument, or contrivance, or in any other manner, [s/he] intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or [s/he] willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or [s/he] uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained . . . .

Cal. Penal Code § 631(a).

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

73.     Further, a person violates § 631(a) if s/he "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned" in the preceding paragraph. *Id.*

74.     To avoid liability under § 631(a), a defendant must show it had the consent of <u>all</u> parties to a communication.

75.     At all relevant times, Defendant aided, agreed with, and conspired with Google and TikTok to simultaneously track and intercept Plaintiff's and Class Members' internet communications while accessing www.callondoc.com.  These communications were intercepted without the authorization and consent of Plaintiff and Class Members.

76.     Defendant, when aiding and assisting the wiretapping, which occurred in California, intended to help Google and TikTok learn some meaning of the content in the URLs, the answers to intake questions, and the content the visitor requested.

77.     The following items constitute "machine[s], instrument[s], or contrivance[s]" under the CIPA, and even if they do not, Google Analytics, and the TikTok Pixel fall under the broad catch-all category of "any other manner":

    a.     The computer codes and programs Google and TiTok used to track Plaintiff's and Class Members' communications while they were navigating callondoc.com;

    b.     Plaintiff's and Class Members' browsers;

    c.     Plaintiff's and Class Members' computing and mobile devices;

    d.     Google's and TikTok's web and ad servers;

    e.     The web and ad-servers from which Google and TikTok tracked and intercepted Plaintiff's and Class Members' communications while they were using a web browser to access or navigate callondoc.com;

    f.     The computer codes and programs used by Google and TikTok to effectuate their tracking and interception of Plaintiff's and Class

Members' communications while they were using a browser to visit callondoc.com; and

    g.    The plan Google and TikTok carried out to effectuate their tracking and interception of Plaintiff's and Class Members' communications while they were using a web browser or mobile application to visit callondoc.com.

78.    The patient communications and health information that Defendant transmitted using Google Analytics, and the TikTok Pixel, such as information regarding Plaintiff's health and treatment, constituted PHI and/or PII.

79.    As demonstrated hereinabove, Defendant violated CIPA by aiding and permitting third parties to receive its patients' online communications through the Website without their consent.

80.    As a result of the above violations, Defendant is liable to Plaintiff and other Class Members in the amount of, the greater of, $5,000 dollars per violation or three times the amount of actual damages. Additionally, Cal. Penal Code § 637.2 specifically states that "[it] is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages."

<u>**COUNT II**</u>
**Violation of the California Confidentiality of Medical Information Act**
**Cal. Civ. Code § 56.10**

81.    Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein and brings this count individually and on behalf of the members of the Class.

82.    Under the California Confidentiality of Medical Information Act, Cal. Civ. Code § 56.10 ("CMIA"), providers of health care are prohibited from disclosing medical information relating to their patients without a patient's authorization. Medical information refers to "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care . . . regarding a patient's medical history, mental or physical condition, or

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

treatment. "Individually Identifiable" means that the medical information includes or contains any element of personal identifying information sufficient to allow identification of the individual . . . ."

83.   Defendant is a "provider of healthcare" under the CMIA because it maintains medical information and offers software to consumers that is designed to maintain medical information for the purpose of allowing its users to manage their information or make the information available to a healthcare provider, or for the diagnosis, treatment, or management of a medical condition (Cal. Civ. Code §56.06(a)-(b)).

84.   Plaintiff and Class Members are patients, and, as a healthcare provider, Defendant had an ongoing obligation to comply with the CMIA's requirements.

85.   As set forth hereinabove, a full name, IP address, email address, or phone number is an identifier sufficient to allow identification of an individual. Along with patients' PII, Defendant disclosed to the Third Parties several pieces of information regarding its patients' use of Defendant's Website, which, on information and belief, included, but was not limited to: patient medical conditions, medical concerns, treatment patients were seeking, and/or the fact that patients were seeking a prescription for treatment of those conditions.

86.   This patient information was derived from a provider of health care regarding patients' medical treatment and physical condition. Accordingly, it constituted medical information pursuant to the CMIA.

87.   As demonstrated hereinabove, Defendant failed to obtain its patients' valid authorization for the disclosure of medical information.

88.   Pursuant to CMIA § 56.11, a valid authorization for disclosure of medical information must: (1) be "[c]learly separate from any other language present on the same page and is executed by a signature which serves no other purpose than to execute the authorization"; (2) be signed and dated by the patient or his representative; (3) state the name and function of the third party that receives the

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

information; and (4) state a specific date after which the authorization expires. Defendant did not obtain any such authorization from Plaintiff or Class Members.

89.    Based on the above, Defendant violated the CMIA by disclosing its patients' medical information to Google and TikTok along with the patients' full names, email addresses, IP addresses, and phone numbers.

90.    Under the CMIA, a patient may recover compensatory damages, punitive damages not to exceed $3,000 dollars and attorneys' fees not to exceed $1,000, and the costs of litigation for any violating disclosure of medical information. Alternatively, a patient may recover nominal damages of $1,000 for any negligent release of medical information.

## COUNT III
### Invasion of Privacy Under California's Constitution/Intrusion Upon Seclusion

91.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein and brings this claim individually and on behalf of the members of the Class.

92.    Plaintiff and Class Members have an interest in: (1) precluding the dissemination and/or misuse of their sensitive, confidential communications and protected health information; and (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to visit and interact with various internet sites without being subjected to wiretaps without Plaintiff's and Class Members' knowledge or consent.

93.    At all relevant times, by using Google Analytics and the TikTok Pixel to record and communicate users' identifying information, alongside their confidential medical communications, Defendant intentionally invaded Plaintiff's and Class Members' privacy rights under the California Constitution, as well as intruded upon Plaintiff's and Class Members' seclusion.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

94.    Plaintiff and Class Members had a reasonable expectation that their communications, identities, health information, and other data would remain confidential, and that Defendant would not install wiretaps on callondoc.com.

95.    Plaintiff and Class Members did not authorize Defendant to record and transmit Plaintiff's and Class Members' private medical communications alongside their personally identifiable health information.

96.    This invasion of privacy was serious in nature, scope, and impact because it related to patients' private medical communications.  Moreover, it constituted an egregious breach of the societal norms underlying the privacy right.

97.    Accordingly, Plaintiff and Class Members seek all relief available for invasion of privacy claims under California's Constitution and common law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and behalf of all others similarly situated, seek judgment against Defendant, as follows:

A.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as the representative of the Class, and Plaintiff's attorneys as Class Counsel to represent the Class Members.

B.    For equitable relief enjoining Defendant from engaging in the wrongful conduct alleged in this Complaint pertaining to the misuse and/or disclosure of the Private Information of Plaintiff and Class Members;

C.    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

D.    For an award of damages, including, but not limited to, actual, consequential, statutory, punitive, and nominal damages, as allowed by law in an amount to be determined;

E.    For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F.    For prejudgment interest on all amounts awarded; and

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

G.    Such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.

Dated:  November 7, 2024            **BURSOR & FISHER, P.A**.

By:   */s/ Brittany S. Scott*
            Brittany S. Scott

Brittany S. Scott (State Bar No. 327132)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: bscott@bursor.com
            jwilner@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: 646-837-7150
Facsimile: (212) 989-9163
E-Mail: pfraietta@bursor.com

**DRURY LEGAL, LLC**
Scott R. Drury (State Bar No. 355002)
6 Carriage Lane
Highwood, Illinois 60040
Telephone: (312) 358-8225
E-mail: scott@drurylegal.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED