**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: 646-837-7150
Facsimile: (212) 989-9163
E-Mail: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: jwilner@bursor.com

**DRURY LEGAL, LLC**
Scott R. Drury (State Bar No. 355002)
6 Carriage Lane
Highwood, Illinois 60040
Telephone: (312) 358-8225
E-MAIL: scott@drurylegal.com

*Attorneys For Plaintiff*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, individually and on behalf all others similarly situated,<br><br>                      Plaintiff,<br><br>    v.<br><br>CALL-ON-DOC, INC.,<br><br>                   Defendant. | Case No. 3:24-cv-02095-GPC-KSC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date:   June 13, 2025<br>Time:  1:30 p.m.<br>Courtroom:  2D<br>Judge:  Hon. Gonzalo P. Curiel |

1

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ................................................................................................ 1

ARGUMENT ...................................................................................................... 2

I.      THIS COURT HAS JURISDICTION OVER DEFENDANT ......................... 2

II.     PLAINTIFF HAS ARTICLE III STANDING ................................................. 8

III.    PLAINTIFF'S CLAIMS ARE SUFFICIENTLY PLED ............................... 12

    A.    Plaintiff States a CIPA Claim ................................................. 12

        1.    Plaintiff Alleges Conduct Occurring in California .................... 12

        2.    Plaintiff Alleges the Interception of Her Communications ................................................................. 13

        3.    Plaintiff Alleges a Violation of Clause Two of CIPA § 631(a) ....................................................................... 15

        4.    Plaintiff Alleges Defendant Aided Google and TikTok's Wiretapping ............................................... 17

    B.    Plaintiff States a CMIA Claim ................................................. 19

        1.    The Complaint Alleges the Conduct Occurred in California ................................................................... 19

        2.    Defendant Is a "Provider of Health Care" ................................. 19

        3.    Plaintiff Alleges the Disclosure of Medical Information ............................................................... 20

    C.    Plaintiff States a Constitutional Invasion of Privacy Claim ................. 22

CONCLUSION ................................................................................................ 24

1

**TABLE OF AUTHORITIES**

2

**PAGE(S)**

3

**CASES**

4

*A.S. v. SelectQuote Ins. Servs.*,
   2024 WL 3881850 (S.D. Cal. Aug. 19, 2024) ...................................................11

5

6

*Amazon Payments, Inc. v. Penson & Co. LLC*,
   2024 WL 3152377 (N.D. Cal. June 24, 2024) ....................................................7

7

8

*B.K. v. Eisenhower Med. Ctr.*,
   721 F. Supp. 3d 1056 (C.D. Cal,. 2024)...........................................................22

9

10

*Balletto v. Am. Honda Motor Co.*,
   2023 WL 7026931 (N.D. Cal. Oct. 24, 2023) ...................................................19

11

12

*Briskin v. Shopify, Inc.*,
   2025 WL 1154075 (9th Cir. April 21, 2025) ................................................3, 5

13

*Brown v. Google LLC*,
   525 F. Supp. 3d 1049 (N.D. Cal. 2021) ............................................................24

14

15

*Brown v. Google LLC*,
   685 F. Supp. 3d 909 (N.D. Cal. 2023) ..............................................................14

16

17

*Byars v. Goodyear Tire and Rubber Co.*,
   654 F. Supp. 3d 1020 (C.D. Cal. 2023)............................................................10

18

19

*Calhoun v. Google LLC*,
   526 F. Supp. 3d (N.D. Cal. 2021) .....................................................................24

20

21

*California. Oceanside Health Prods., LLC v. Dvir Deri, LLC*,
   2024 WL 2269270 (9th Cir. May 20, 2024) ......................................................7

22

23

*Campbell v. Facebook Inc.*,
   77 F. Supp. 3d 836 (N.D. Cal. 2014) ................................................................16

24

*Colleen M. v. Fertility & Surgical Assocs. Of Thousand Oaks*,
   132 Cal. App. 4th 1466 (Cal. Ct. App. 2005) ..................................................21

25

26

*Cousin v. Sharp Healthcare*,
   2023 WL 8007350 (S.D. Cal. Nov. 17, 2023) ...........................................2, 13, 14

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*D'Angelo v. FCA US, LLC*,
   726 F. Supp. 3d 1179 (S.D. Cal. 2024) ....................................................................11

*D'Angelo v. Penny OpCo, LLC d/b/a JCPenney*,
   2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) ...................................................19, 20

*Doe v. Meta Platforms, Inc.*,
   2023 WL 5837443 (N.D. Cal. Sept. 7, 2023) .......................................................2, 15

*Doe v. Regents of Univ. of Cal.*,
   672 F. Supp. 3d 813 (N.D. Cal. 2023) ...........................................................2, 15, 24

*Eisenhower Med. Ctr. v. Superior Ct.*,
   226 Cal. App. 4th 430 (Cal. Ct. App. 2014) .........................................................21

*Garcia v. Build.com, Inc.*,
   2023 WL 4535531 (S.D. Cal. July 13, 2023)...................................................10, 11

*Graham v. Noom, Inc.*,
   533 F. Supp. 3d 823 (N.D. Cal. 2021) ..................................................................19

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
   72 F.4th 1085 (9th Cir. 2023)........................................................................5, 6, 7

*In re Ambry Genetics Data Breach Litigation*,
   567 F. Supp. 3d 1130 (C.D. Cal. 2021)...............................................................24

*In re Facebook Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020)...................................................................8, 13, 23

*In re Google Assistant Privacy Litig.*,
   457 F. Supp. 3d 797 (N.D. Cal. 2020) .................................................................10

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
   934 F.3d 316 (3d Cir. 2019)...................................................................................9

*In re Google RTB Consumer Priv. Litig.*,
   606 F.Supp.3d 935 (N.D. Cal. June 13, 2022).....................................................14

*In re Meta Pixel Healthcare Litig.*,
   647 F. Supp. 3d 778 (N.D. Cal. 2022) ........................................................2, 14, 15

*In re Yahoo Mail Litig.*,
   7 F. Supp. 3d 1016 (N.D. Cal. 2014) ...................................................................16

OPPOSITION TO MOTION TO DISMISS              CASE NO. 3:24-CV-02095-GPC-KSC

*James v. Walt Disney Co.*,
   701 F. Supp. 3d 942 (N.D. Cal. 2023) .................................................................. 10

*Jones v. Ford Motor Co.*,
   85 F.4th 570 (9th Cir. 2023) ............................................................................... 8

*M.G. v. Therapymatch, Inc.*,
   2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) ...................................................... 22

*Marden v. LMND Med. Group, Inc.*,
   2024 WL 4448684 (N.D. Cal. July 3, 2024) ......................................................... 22

*Mata v. Zillow Grp., Inc.*,
   2024 WL 5161955 (S.D. Cal. Dec. 18, 2024) ................................................. 15, 16

*Mount v. PulsePoint, Inc.*,
   684 F. App'x 32 (2d Cir. 2019) ............................................................................ 9

*Ojeda v. Kaiser Permanente Int'l., Inc.*,
   2022 WL 18228249 (C.D. Cal. Nov. 29, 2022) ..................................................... 23

*R.C. v. Walgreen Co.*,
   733 F. Supp. 3d 876 (C.D. Cal. 2024) .................................................................. 15

*Rodriguez v. Google LLC*,
   2021 WL 2026726 (N.D. Cal. May 21, 2021) ....................................................... 24

*Rodriguez v. Google LLC*,
   2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ......................................................... 17

*Salazar v. Nat'l Basketball Ass'n*,
   118 F.4th 533 (2d Cir. 2024) ............................................................................... 9

*St. Aubin v. Carbon Health Techs., Inc.*,
   2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) ................................................ passim

*Stasi v. Inmediata Health Group Corp.*,
   501 F. Supp. 3d 898 (S.D. Cal. 2020) .................................................................. 24

*Sunday Red, LLC v. Tigeraire, Inc.*,
   2024 WL 5339390 (C.D. Cal. Dec. 13, 2024) ........................................................ 7

*Swarts v. Home Depot, Inc.*,
   689 F. Supp. 3d 732 (N.D. Cal. 2023) ................................................................... 7

iv

*TransUnion LLC v. Ramirez,*
  594 U.S. 413 (2021) ........................................................................ 10, 11

*United States v. Hunter,*
  739 F.3d 492 (10th Cir. 2013) ................................................................ 17

*Valenzuela v. Nationwide Mut. Ins. Co.,*
  686 F. Supp. 3d 969 (C.D. Cal. 2023) ..................................................... 19

*Vizio Inc. Consumer Priv. Litig.,*
  238 F. Supp. 3d 1204 (C.D. Cal. 2017) .................................................... 17

*Wakefield v. ViSalus, Inc.,*
  51 F.4th 1109 (9th Cir. 2022) ................................................................. 11

*Yale v. Clicktale, Inc.,*
  2021 WL 1428400 (N.D. Cal. Apr. 15, 2021) ............................................ 19

*Yockey v. Salesforce, Inc.,*
  2023 WL 5519323 (N.D. Cal. Aug. 25, 2023) ................................... 2, 15, 19

*Zarif v. Hwareh.Com, Inc.,*
  2025 WL 486317 (S.D. Cal. Feb. 13, 2025) .............................................. 7, 8

**STATUTES**

Cal. Civ. Code § 56.05(i) ........................................................................ 21

Cal. Civ. Code § 56.06 ........................................................................... 20

Cal. Civ. Code § 56.06(b) ....................................................................... 20

Cal. Civ. Code § 56.06(e) ....................................................................... 20

Cal. Civ. Code § 56.10 ....................................................................... 2, 22

Cal. Civ. Code § 56.10(a) ....................................................................... 21

Cal. Penal Code § 631 .............................................................................. 2

Cal. Penal Code § 631(a) ................................................................... 12, 15

1    Plaintiff Jane Doe ("Plaintiff") respectfully submits this opposition to

2    Defendant Call-On-Doc, Inc.'s ("Call-On-Doc" or "Defendant") Motion to Dismiss

3    (ECF No. 10) (the "Motion" or "MTD").

4                                **INTRODUCTION**

5    This is a straightforward case. Plaintiff's Complaint (ECF No. 1) (the

6    "Complaint" or "Compl.") contains clear allegations that she visited Defendant's

7    website, callondoc.com, and entered information relating to the treatment she was

8    seeking for health conditions. Compl. ¶ 5. Unbeknownst to Plaintiff, Defendant aided

9    and assisted various third parties, including Google and TikTok (together, the "Third

10   Parties") "with intercepting Plaintiff's communications, including those that

11   contained personally identifiable information ('PII'), protected health information

12   ('PHI'), and related confidential information." *Id.* ¶ 6; *see also id.* ¶ 2. Defendant

13   accomplished this via two tracking technologies loaded onto Defendant's website

14   (the "Website"): Google Analytics and the Tik Tok Pixel.

15   The Complaint alleges "Defendant intentionally embedded and configured

16   Google Analytics on all pages where users entered PII and PHI . . . . At relevant

17   times, each time a Call-On-Doc patient selected a condition for treatment or entered

18   information into the intake portion of the Website, the Google Analytics tracking

19   code automatically sent a simultaneous transmission of that information to Google."

20   *Id.* ¶¶ 33-34. Similarly, "Defendant intentionally embedded and installed the TikTok

21   Pixel on all pages where users entered PII and PHI" *Id.* ¶ 52. Thus, "each time a

22   Call-On-Doc patient visited a page on the Website, including pages where the

23   patient's condition or treatment is included in the page URL, the TikTok Pixel

24   automatically sent a simultaneous transmission of the URL to TikTok." *Id.* ¶ 54.

25   Once intercepted, Google and TikTok each process and analyze the information for

26   use in their own advertising services, beyond their services to Defendant. *Id.* ¶¶ 38-

27   42, 56-60.

28

1

Despite these allegations, Defendant moves to dismiss each claim, largely in reliance upon the false premise that Plaintiff failed to sufficiently allege the unlawful disclosure of her PHI. To the contrary, Plaintiff makes specific allegations regarding: (1) the nature of her communications with Defendant—*i.e.*, about the type of medical treatment she sought; and (2) Defendant's disclosure of the PHI to the Third Parties without consent. As discussed below, Plaintiff's allegations sufficiently allege: (1) violations of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631; (2) violations of the California Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code § 56.10, *et seq.*; and (3) invasion of privacy under California's Constitution and the common law.

Numerous Courts have denied motions to dismiss in cases involving the same, or similar technology. *See, e.g.*, *Doe v. Meta Platforms, Inc.*, 2023 WL 5837443, at *4 (N.D. Cal. Sept. 7, 2023) (denying motion to dismiss where plaintiffs alleged that hospital systems surreptitiously shared patient health information with Facebook); *Doe v. Regents of Univ. of Cal.* ("*Regents*")*,* 672 F. Supp. 3d 813, 819 (N.D. Cal. 2023); *Yockey v. Salesforce, Inc.*, 2023 WL 5519323, at *7 (N.D. Cal. Aug. 25, 2023); *In re Meta Pixel Healthcare Litig.* ("*Meta Pixel*"), 647 F. Supp. 3d 778, 793 (N.D. Cal. 2022); *Cousin v. Sharp Healthcare* ("*Cousin II*"), 2023 WL 8007350, at *1 (S.D. Cal. Nov. 17, 2023). This Court should follow suit and deny Defendant's motion to dismiss in its entirety.

## ARGUMENT

## I. THIS COURT HAS JURISDICTION OVER DEFENDANT

Defendant argues "Plaintiff fails to establish [this Court has] personal jurisdiction [over Defendant]." MTD at 3. This is wrong. Defendant is correct to apply the *Calder* test, but is mistaken in its application in the Ninth Circuit.[1] *Id.* at 4.

---

[1] Defendant only argues that prong two of the *Calder* test is not satisfied and, thus, has waived any argument that Plaintiffs have failed to satisfy prong one or three. For

2

The Ninth Circuit's recent decision in *Briskin v. Shopify, Inc*. controls. --- F.4th---, 2025 WL 1154075 (9th Cir. April 21, 2025). There, the court held that the *Calder* test's "express aiming" requirement had been satisfied where the defendant, *inter alia*, "expressly aimed its conduct at California through its extraction, maintenance, and commercial distribution of the California consumers' personal data in violation of California laws." *Id*. at *11. The court's detailed analysis, set forth below, explained why this is the case and why conduct such as that of Defendant here indisputably satisfies the "express aiming" requirement:

> As part of its regular of business, Shopify is alleged to target California consumers to extract, collect, maintain, distribute, and exploit for its own profit, not only the California consumers' payment information that it diverts to its own servers, but also all of the other personal identifying information that it extracts from the software it permanently installs on their devices without their knowledge or consent. Thus, Shopify's business model is to perform the payment processing services it contracts to provide for its merchants and, in the course of doing so, to obtain valuable personal data about California consumers for its own commercial gain. Accordingly, through those business activities, Shopify allegedly tortiously violated consumers' privacy through its collection, maintenance, and sale of valuable personal data from California consumers, like Briskin.

> To return to the "*Calder* effects" test, each of Shopify's actions in its regular course of business is an intentional act, which Shopify knows will cause harm to California consumers by violating the very laws that the California legislature has enacted to protect California consumers' rights to data privacy and security, and from unfair business practices. The parties do not dispute that the first and third factors required for a finding of purposeful direction are met. Rather, the crux of the parties' dispute is the second *Calder* factor: whether Shopify's conduct is expressly aimed at California or its residents or, as Shopify contends, is mere happenstance arising from the California consumers' choice to do business with a merchant that has contracted with Shopify. And here, it is clear that Shopify expressly aimed its conduct at California through its extraction, maintenance, and commercial distribution of the California consumers' personal data in violation of California laws.

> We do not agree that the effect on Briskin is mere happenstance because Shopify allegedly knew the location of consumers like Briskin either prior to or shortly after installing its initial tracking software onto their devices. We conclude that Shopify's intentional activities constitute express aiming toward California and its

the sake of completeness, Plaintiff argues here that she has satisfied prongs one and three.

OPPOSITION TO MOTION TO DISMISS                    CASE NO. 3:24-CV-02095-GPC-KSC

1    consumers to obtain and use their personal data for its own
2    commercial gain. *See Mavrix Photo*, 647 F.3d at 1229 (considering individual targeting of forum residents).

3    Pre-internet, there would be no doubt that the California courts would
4    have specific personal jurisdiction over a third party who physically entered a Californian's home by deceptive means to take personal information from the Californian's files for its own commercial gain.
5    *See* Restatement (Second) of Conflict of Laws §36 (1971) ("A state
6    has power to exercise judicial jurisdiction over an individual who has done, or has caused to be done, an act in the state with respect to any cause of action in tort arising from the act.").

7    As the Supreme Court noted in *Walden*, "although physical presence
8    in the forum is not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person or through an agent,
9    goods, mail, *or some other means*—is certainly a relevant contact."
    *Walden*, 571 U.S. at 285 (emphasis added and citation omitted). Here,
10   though Shopify's entry into the state of California is by electronic means, its surreptitious interception of Briskin's personal identifying
11   information certainly is a relevant contact with the forum state.

12   *Id*.

13        Here, the Complaint alleges that Defendant, as part of its regular course of

14   business: (1) targeted California consumers; and (2) installed the tracking

15   technologies of the Third Parties, including Google and TikTok, on its Website,

16   which allowed for the interception of consumers' sensitive personal information by

17   Google and TikTok for its own profit, as well as the profit of the Third Parties.

18   Compl. ¶ 33 ("Defendant intentionally embedded and configure Google Analytics

19   on all pages where users entered PII and PHI"), 42 ("Thus, the agreement for

20   Defendant to aid in Google's wiretapping of Plaintiff and Class Members' PII and

21   PHI is done for the purpose of improperly increasing the advertising efficiency and,

22   by extension, profits of both parties."), ¶ 52 ("Defendant intentionally embedded and

23   installed the TikTok Pixel on all pages where users entered PII and PHI"), ¶ 60

24   ("Thus, the agreement for Defendant to aid in TikTok's wiretapping of Plaintiff and

25   Class Members' PHI and PII is done for the purpose of improperly increasing the

26   advertising efficiency and, by extension, profits of both parties.").

27        Here, through the surreptitious use of the tracking technologies,

28   Defendant knew it was intentionally aiding the Third Parties in obtaining the

4

sensitive information of California residents to be used for its own purposes and the purposes of the Third Parties. Under *Briskin*, the conduct constitutes "express aiming" – *i.e.*, Defendant "expressly aimed its conduct at California through its extraction, maintenance, and commercial distribution of the California consumers' personal data in violation of California laws." *Briskin*, 2025 WL 1154075 at *11.

Importantly, in *Briskin*, the court also held that differential targeting of California residents is not required for there to be "express aiming." *Id.* at *12. According to the court, "an interactive platform 'expressly aims' its wrongful conduct toward a forum state when its contacts are its 'own choice and not random, isolated, or fortuitous,' even if that platform cultivates a 'nationwide audience[] for commercial gain.'" *Id.* (internal citations omitted).

Here, Defendant made the affirmative choice to provide telehealth services to California patients and to disclose those patients' sensitive data to Google and TikTok. *See* Compl. ¶¶ 2, 6, 20. Again, under *Briskin*, Defendant's actions satisfy the "express aiming" requirement, thereby allowing this Court to exercise personal jurisdiction over Defendant.

Absent *Briskin*, this Court may still exercise personal jurisdiction over Defendant based on the Ninth Circuit's holding in *Herbal Brands, Inc. v. Photoplaza, Inc*., 72 F.4th 1085, 1092 (9th Cir. 2023), relied on by Defendant. MTD at 4. There, the Ninth Circuit held the *Calder* test was satisfied for a health and wellness website that shipped products to California. *Herbal Brands*, 72 F.4th at 1091. After finding that "Plaintiff easily satisfies the first and third elements of the *Calder* effects test[,]" (*id*.) the Court found that the Defendant's conduct directly targeted the forum:

> [W]e conclude that the sales of physical products into a forum via an interactive website can be sufficient to establish that a defendant expressly aimed its conduct at the forum, provided that two key elements are present. First, the sales must occur as part of the

5

defendant's regular course of business instead of being "random, isolated, or fortuitous." When an online sale occurs as part of a defendant's regular course of business, it "arises from the efforts of the [seller] to serve directly or indirectly[ ] the market for its product ...," and the defendant "should reasonably anticipate being haled into court" where the product is sold…

Second, the defendant must exercise some level of control over the ultimate distribution of its products beyond simply placing its products into the stream of commerce…

Plaintiff's allegations meet this standard. First, Defendants allegedly used their Amazon storefronts— their means of conducting regular business—to make product sales to Arizona residents. Plaintiffs specifically allege that Defendants operated their storefronts under the names of business entities, offered a variety of Herbal Brands products on their storefronts, and conducted a high volume of sales throughout the country. Second, Defendants exercised control over distribution: they created and maintained a distribution network that reached the relevant forum by choosing to operate on a universally accessible website that accepts orders from residents of all fifty states and delivers products to all fifty states…

The outcome of the express-aiming inquiry does not depend on the number of sales made to customers in the forum. Drawing a line based on the number of sales would require an arbitrary distinction that is not preferred in this area of the law.

*Id.* at 1094-1095 (internal citations omitted).

So too here. The Complaint's alleges that, through Defendant's Website, patients, including California patients such as Plaintiff, can order physical "tests for 'diabetes, cholesterol, thyroid, kidney and liver problems and STDs' among other things" (Compl. ¶¶ 21-22) and schedule live online appointments. *See* Compl. ¶¶ 5, 20-26. This is "part of Defendant's regular course of business" as its primary mode of operation is to sell these goods and services. *Id.* ¶¶ 20-26. Based on these allegations, it is reasonable to infer that Defendant: (1) ships the ordered products to California patients in California; and (2) provides treatment to California patients. Based on Plaintiff's allegations and the reasonable inferences therefrom, under

6

*Herbal Brands*, this Court may exercise personal jurisdiction over Defendant. *See* 72 F.4th at 1091, 1094-95.

Numerous courts have found specific jurisdiction for similar contact with California. *Oceanside Health Prods., LLC v. Dvir Deri, LLC*, 2024 WL 2269270, at *2-*3 (9th Cir. May 20, 2024) ("Here, the 'express aiming' element is satisfied for the same reasons articulated in *Herbal Brands.* First, the online sales of Detoxify products are alleged to have occurred in the regular course of Defendants' business . . . . Second, Defendants exercised control over the ultimate distribution of their products in California."); *Zarif v. Hwareh.Com, Inc.* ("*Zarif II*"), 2025 WL 486317, at *4 (S.D. Cal. Feb. 13, 2025) ("[T]he sale of products to forum residents would provide the requisite "something more" even if Health Warehouse had not marketed its website to California residents."); *Sunday Red, LLC v. Tigeraire, Inc.*, 2024 WL 5339390, at *4 (C.D. Cal. Dec. 13, 2024) ("Here, the court finds both of these elements are satisfied. Although California sales constitute only a small portion of Tigeraire's overall sales, the evidence reflects that Tigeraire has sold products into California as part of its regular course of business for multiple years."); *Amazon Payments, Inc. v. Penson & Co. LLC*, 2024 WL 3152377, at *2 (N.D. Cal. June 24, 2024) ("Yun Duan "expressly aimed" its conduct at California by selling its products via Amazon and causing those products to be delivered in the state during its regular course of business."); *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 742 (N.D. Cal. 2023) ("Taking the allegations of Swarts's complaint as true, as it must, the Court finds that he sufficiently alleges that Home Depot sold a physical product to him via its interactive website. Therefore, Swarts has satisfied the express aiming element, and has established that Home Depot purposefully directed its conduct at the forum state.").

Defendant is mistaken in arguing that defendants are not subject to the *Calder* test in cases involving the interception of confidential communications. MTD at 10. The inquiry is whether Defendant purposefully directed its activities to California

such that it could reasonably anticipate being haled into court in California, not a test based on the type of claim asserted or whether Plaintiff purchased a physical product. Further, courts have applied the *Calder* test in cases with identical claims. *See Zarif II*, 2025 WL 486317, at *4 (finding personal jurisdiction in a case involving a CIPA claim, finding "[a] California customer browsing and shopping for prescription drugs is plainly related to [defendant's] forum activities of marketing, selling, and shipping prescription drugs to California residents.").

Defendant misleadingly cites to *Zarif v. Hwareh*, 2024 WL1268167 (S.D. Cal. Mar. 25, 2024) ("*Zarif I*"), without mentioning the court's more recent opinion in *Zarif II*. MTD at 1. As discussed above, in *Zarif II*, the court denied the defendant's motion to dismiss for lack of personal jurisdiction, finding *Herbal Brands* controls and "the sale of products to forum residents would provide the requisite "something more" even if [the defendant] had not marketed its website to California residents. *Zarif II*, 2025 WL 486317 at *4.

## II.    PLAINTIFF HAS ARTICLE III STANDING

Defendant next argues that "Plaintiff has not alleged an injury in fact" and, therefore, does not have Article III standing. MTD at 8. Defendant is wrong.

As the Ninth Circuit and every other circuit court to address the question has held, the interception of web browsing information in violation of a privacy statute (including the CIPA) is sufficient for Article III standing.  *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 596, 599 (9th Cir. 2020) (finding Article III standing where "Facebook uses plug-ins to track users' browsing histories when they visit third-party websites, and then compiles these browsing histories into personal profiles which are sold to advertisers to generate revenue"); *Jones v. Ford Motor Co.*, 85 F.4th 570, 574 (9th Cir. 2023) ("A statute that codifies a common law privacy right gives rise to a concrete injury sufficient to confer standing.") (cleaned up); *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 542 (2d Cir. 2024) (finding standing where plaintiff alleged his data "was disclosed as a result of an arrangement

OPPOSITION TO MOTION TO DISMISS                    CASE NO. 3:24-CV-02095-GPC-KSC

1   between the NBA and Meta pursuant to which the NBA deliberately uses the

2   Facebook Pixel") (cleaned up); *Mount v. PulsePoint, Inc.*, 684 F. App'x 32, 34-35

3   (2d Cir. 2019) ("PulsePoint's alleged unauthorized accessing and monitoring of

4   plaintiffs' web-browsing activity implicates harms similar to those associated with

5   the common law tort of intrusion upon seclusion so as to satisfy the requirement of

6   concreteness."). As the Third Circuit aptly put it, "[i]n an era when millions of

7   Americans conduct their affairs increasingly through electronic devices, the assertion

8   . . . that federal courts are powerless to provide a remedy when an internet company

9   surreptitiously collects private data [] is untenable." *In re Google Inc. Cookie*

10   *Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3d Cir. 2019).

11      Ignoring this authority, Defendant contends "Plaintiff's conclusory allegation

12   that she disclosed 'personal information' does not allow the Court to determine

13   whether Plaintiff has a protectable interest in that information." MTD at 9. However,

14   Plaintiff alleges she "selected the condition for which she was seeking treatment and

15   answered a series of questions related to her physical health." Compl. ¶ 5. Plaintiff

16   also alleges this information must be entered in order for a patient to seek treatment

17   on the Website, which Plaintiff alleges she did. *Id*. ¶¶ 5, 22-26.

18      Plaintiff further alleges that "each time a Call-On-Doc patient [including

19   Plaintiff] selected a condition for treatment or entered information into the intake

20   portion of the Website, the Google Analytics tracking code automatically sent a

21   simultaneous transmission of that information to Google." *Id*. ¶ 34. Similarly, "each

22   time a Call-On-Doc patient visited a page on the Website, including pages where the

23   patient's condition or treatment is included in the page URL, the TikTok Pixel

24   automatically sent a simultaneous transmission of the URL to TikTok." *Id*. ¶ 54.

25   According to the Complaint, "Defendant aided and assisted the Third Parties with

26   intercepting Plaintiff's communications" by installing the trackers on its website."

27   *Id*. ¶ 6.

28

OPPOSITION TO MOTION TO DISMISS        CASE NO. 3:24-CV-02095-GPC-KSC

1      Based on the above-described allegations, it is reasonable to infer that Plaintiff

2  provided confidential PHI to Defendant when she sought treatment via Defendant's

3  Website and that the Third Parties intercepted that PHI. *See James v. Walt Disney

4  Co.*, 701 F. Supp. 3d 942, 949 n.2 (N.D. Cal. 2023) ("The Court acknowledges that

5  the complaint does not expressly tie the allegations . . . to Plaintiffs specifically.

6  However . . . it can reasonably be inferred that the list of information that BlueKai

7  collects applies to Plaintiffs."); *see also Garcia v. Build.com, Inc.*, 2023 WL

8  4535531, at *3 (S.D. Cal. July 13, 2023) (finding "Plaintiff has standing at this

9  stage" and rejecting argument that "Plaintiff never asserts that *she* shared 'highly

10  sensitive personal data' with Defendant through the chat feature") (emphasis in

11  original). Notably, Plaintiff is not required to allege her specific Website

12  communications she had via the Website. *James*, 701 F. Supp. 3d at 956 ("[T]o the

13  extent Disney suggests Plaintiffs must plead the exact communications they had with

14  the ESPN.com website, other courts have rejected that position."); *Byars v.*

15  *Goodyear Tire and Rubber Co.*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023)

16  ("[T]here is no requirement that Byars specifically allege the exact contents of her

17  communications with Goodyear."); *In re Google Assistant Privacy Litig.*, 457 F.

18  Supp. 3d 797, 816 (N.D. Cal. 2020) ("[T]he Court rejects Defendants' suggestion

19  that Plaintiffs must identify specific communications that Plaintiffs reasonably

20  believed to be private and that were wrongly recorded. The Court is not convinced

21  that Plaintiffs are required to produce such details at the pleading stage, prior to

22  discovery.").

23      Defendant next contends that to establish Article III standing under

24  *TransUnion LLC v. Ramirez,* 594 U.S. 413, 423 (2021), Plaintiff must allege more

25  than a procedural violation; Plaintiff must plead facts that establish the contents of

26  the communication allegedly intercepted." MTD at 10**.** The contention does not

27  adhere to the authority decided under *TransUnion*. As the Ninth Circuit has held:

28

1

2

3

4

5

> In *TransUnion*, the Supreme Court reaffirmed the preexisting rule that an intangible injury qualifies as "concrete" when that injury bears a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts" . . . . *TransUnion* therefore strengthens the principle that an intangible injury is sufficiently "concrete" when (1) Congress created a statutory cause of action for the injury, and (2) the injury has a close historical or common-law analog.

6

*Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1118 (9th Cir. 2022).

7

8

9

10

11

12

13

14

15

    The Ninth Circuit's holding in "*Wakefield* confirms that Plaintiff has standing here. First, the California legislature created a cause of action in the CIPA statute— and it is the cause of action Plaintiff asserts here. In addition, the Ninth Circuit concluded in *Wakefield* that 'traditional claims for invasion of privacy, intrusion upon seclusion, and nuisance' are 'evidence of a common-law analog to privacy violations.'" *Garcia v. Build.com, Inc.*, 2023 WL 4535531, at *4 (S.D. Cal. July 13, 2023) (internal citation omitted); *see also D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1193 (S.D. Cal. 2024) ("the Court agrees with *Garcia* that '*TransUnion* does not undermine the reasoning in [*In re Facebook*].'").

16

17

18

19

20

21

22

23

24

25

26

27

28

    In asking this Court to require that Plaintiff allege the interception of personal or sensitive information, Defendant cites to *A.S. v. SelectQuote Ins. Servs.*, 2024 WL 3881850, at *8 (S.D. Cal. Aug. 19, 2024). MTD at 10. Notably, that case involved the interception of the plaintiffs "name, date of birth, gender, email address, and health information" (*A.S.*, 2024 WL 3881850 at *8) – precisely the type of information Plaintiff alleges is intercepted on Defendant's website. *See, e.g.*, Compl. ¶ 34 ("[E]ach time a Call-On-Doc patient selected a condition for treatment or entered information into the intake portion of the Website, the Google Analytics tracking code automatically sent a simultaneous transmission of that information to Google."); ¶ 36 ("[W]hen users entered their personal information, like their email address and telephone number, into the Website, Google simultaneously intercepted this information in real time and used it to identify the Website visitor."); ¶ 37 ("Google received, and continues to receive, the treatment sought and the patient's

11

full name through the payment attestation."). As such, even if this Court adopted the approach suggested by Defendant, Plaintiff still has Article III standing.

## III.   PLAINTIFF'S CLAIMS ARE SUFFICIENTLY PLED

### A.   Plaintiff States a CIPA Claim

Defendant argues "Plaintiff fails to allege a violation of CIPA." MTD at 11. This is wrong. CIPA § 631(a) provides for liability for any person who aids, agrees with or conspires with another person who commits a substantive violation of § 631(a) thereof. *See* Cal. Penal Code § 631(a). Specifically, § 631(a) establishes liability for:

> Any person who, by means of any machine, instrument, or contrivance, or in any other manner, **[1]** intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, **[2]** or who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; **[3]** or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained; **[4]** or *who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section* . . . .

Cal. Penal Code § 631(a) (bracketed numbers and emphasis added).

### 1.   Plaintiff Alleges Conduct Occurring in California

Defendant argues "Plaintiff has [] failed to plead sufficient facts that CIPA even applies to the conduct alleged in the Complaint" because there are supposedly no allegations that the conduct occurred in California. MTD at 12. Not so.

12

First, the Complaint specifically alleges that the underlying conduct at issue – *i.e.*, wiretapping – occurred in California. Compl. ¶ 76 ("Defendant, when aiding and assisting the wiretapping, **which occurred in California**, intended to help Google and TikTok learn some meaning of the content in the URLs . . . .) (emphasis added). Further, Plaintiff alleges: (1) she is a California resident (*id*. ¶ 4); (2) Defendant is "a healthcare provider that gives patients the ability to consult with experienced doctors from the comfort of their own homes" (*id*. ¶ 20); and (3) she visited the Website several times to make exactly that type of home appointment (*id*. ¶ 5). Given that people do not often travel out of state to make a telehealth appointment, it is reasonable to infer from the allegations above that Plaintiff made her appointments while in California. In short, Defendant aided the Third Parties in wiretapping the confidential communications of a California resident while in California.

### 2. Plaintiff Alleges the Interception of Her Communications

Defendant next argues "Plaintiff fails to allege what information she communicated to Call-On-Doc." MTD at 13. Though not entirely clear, it appears Defendant is arguing that Plaintiff did not allege Google and TikTok intercept the contents of patients' communications. MTD at 12-13. Defendant misstates Plaintiff's allegations.

*Cousin v. Sharp Healthcare*, 2023 WL 8007350 (S.D. Cal. Nov. 17, 2023), is instructive. There, the court held that full-string URLs that contained information "such as specialty healthcare providers and treatments for medical conditions" "plausibly conveyed content" – namely, website users' protected health information. *Id*. at *5. Accordingly, the court held that the URLs constituted the "contents" of a communication. *Id*. (citing *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d at 605, 607 (9th Cir. 2020)).

The same is true here. As in *Cousin*, Plaintiff alleges that the Third Parties intercepted the contents of her communications with Defendant via the Website. *See* Compl. ¶¶ 34-38, 53-56, 75-76, 78. The Complaint's allegations sufficiently show

that the intercepted communications contained information about each patient's health and treatment. *See id.* For instance, the Complaint alleges each patient must select a condition for which they are seeking treatment in order to receive that treatment and then is prompted to answer a series of intake questions related to that condition. *Id.* ¶¶ 22-23. Exactly like the URLs in *Cousin*, once a condition is selected, that condition is contained in the website URL. *Id.* ¶ 24. Moreover, "each time a Call-On-Doc patient visited a page on the Website, including pages where the patient's condition or treatment is included in the page URL, the TikTok Pixel automatically sent a simultaneous transmission of the URL to TikTok." *Id.* ¶ 54.

The Google Analytics Pixel on Defendant's Website is even more invasive. *Id.* ¶¶ 34, 37. That pixel not only intercepts each patient's selection for their condition, it also intercepts the answers to the intake questions. *Id.*

There is no doubt that affirmative representations of medical conditions and answers to medical intake questionnaires are the "contents" of a communication under CIPA. *See St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *5 (N.D. Cal. Oct. 1, 2024) (citing *Meta Pixel*, 647 F. Supp. 3d at 795-796) ("Because Plaintiff has sufficiently pleaded that the URLs transmitted to Facebook and Google include a patient's symptoms or the reason for her medical appointment, she sufficiently alleges the contents of a communication."); *In re Google RTB Consumer Priv. Litig.*, 606 F.Supp.3d 935, 949 (N.D. Cal. June 13, 2022) (finding under the Electronic Communications Privacy Act that "referrer URL that caused navigation to the current page," "details about the publisher object of the site or app" and "details about the content within the site or app" all constituted "content"); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 936 (N.D. Cal. 2023) ("full-string detailed URL[s]" containing "users' actions on a website, and their search queries" can constitute content); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024) ("Here, Plaintiffs allege that the data collected by Defendant and transmitted to third parties

1    includes personal health information. Such information reveals a substantive

2    message about Plaintiffs' health concerns.").

3         **3.    Plaintiff Alleges a Violation of Clause Two of CIPA § 631(a)**

4         Defendant argues that "Plaintiff failed to allege a violation of the second

5    clause of 631(a)"[2] because: (1) Defendant was a party to the communications; and

6    (2) Plaintiff has not alleged any communications were intercepted "in transit." MTD

7    at 15-17. The argument fails.

8         First, whether Defendant was a party to the relevant communications is a red

9    herring. Plaintiff clearly alleges that: (1) Google and TikTok, among other Third

10   Parties, are the third-party wiretappers; and (2) "Defendant violated CIPA by aiding

11   and permitting third parties to receive its patients' online communications through

12   the Website without their consent." *See* Compl. ¶¶ 2, 6, 33-38, 52-56, 75-77, 79. The

13   party exception to liability under the CIPA does not apply in this context. Indeed,

14   numerous courts have denied motions to dismiss in cases against website operators

15   for this very conduct. *See*, *e.g.*, *St. Aubin*, 2024 WL 4369675 at *1; *R.C.*, 733 F.

16   Supp. 3d at 876; *Doe v. Meta Platforms, Inc.*, 2023 WL 5837443, at *4 (N.D. Cal.

17   Sept. 7, 2023) (denying motion to dismiss where plaintiffs alleged that hospital

18   systems surreptitiously shared patient health information with Facebook); *Regents*,

19   672 F. Supp. 3d at 819; *Yockey*, 2023 WL 5519323, at *7; *Meta Pixel*, 647 F. Supp.

20   3d at 793; *Mata v. Zillow Grp., Inc.*, 2024 WL 5161955, at *7 (S.D. Cal. Dec. 18,

21   2024).

22        Second, Defendant's argument that "Plaintiff has not alleged that any

23   communications were 'in transit' when intercepted" fares no better. MTD at 16.

24   "While a plaintiff must do more than merely restate the pleading requirement of real

25   time interception, the standard is not overly burdensome. For instance, allegations

26   that communications are intercepted in real time through the use of computer code

27
---
28   [2] Plaintiff's allegations concern aiding violations of Clauses Two and Three of CIPA § 631(a), in violation of Clause 4 of CIPA § 631(a).

OPPOSITION TO MOTION TO DISMISS                    CASE NO. 3:24-CV-02095-GPC-KSC

provides sufficient factual detail to support the 'in transit' requirement." *Mata*, 2024 WL 5161955 at *6 (cleaned up).

Contrary to Defendant's contention, the Complaint sufficiently alleges Plaintiff's communications were intercepted while "in transit" prior to reaching their final destination. Compl. ¶ 34 ("each time a Call-On-Doc patient selected a condition for treatment or entered information into the intake portion of the Website, the Google Analytics tracking code automatically sent a simultaneous transmission of that information to Google."), ¶ 38 ("Google intercepted their PII, PHI and other confidential information in the manner described above in real time as the information was entered into the Website."), ¶ 54 ("each time a Call-On-Doc patient visited a page on the Website, including pages where the patient's condition or treatment is included in the page URL, the TikTok Pixel automatically sent a simultaneous transmission of the URL to TikTok."), ¶ 56 ("TikTok intercepted all of the information described above from Plaintiff and Class Members in real time as the information was entered into the Website."), ¶ 75 ("Defendant aided, agreed with, and conspired with Google and TikTok to simultaneously track and intercept Plaintiff's and Class Members' internet communications while accessing www.callondoc.com."). The above-described allegations sufficiently plead "in-transit" interception. *See St. Aubin*, 2024 WL 4369675 at *6; *Mata*, 2024 WL 5161955, at *6 ("Plaintiff pleads enough factual content for this Court to plausibly infer that Meta intercepted his communications while 'in transit.' Plaintiff alleges that Defendant incorporated third-party tracking technologies into its website so that 'whenever' Plaintiff watched video content, Meta obtained access."); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014) (accepting allegations that communications occur "in transit" and explaining consideration of evidence to the contrary would be "premature" absent a "more developed factual record."); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1028 (N.D. Cal. 2014) (refusing to

16

"assum[e]" communications are not intercepted in transit as that would "contradict[] Plaintiffs' allegations").

The cases relied by Defendant are distinguishable. Unlike here, in *Rodriguez v. Google LLC*, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022), the "Plaintiffs' theory was essentially one of logging and then transmitting," and the operative complaint contained no specific description of how Google is secretly intercepting Plaintiffs' data." *Id.* at *2. The operative complaint instead described a "misuse of a recording." *Id.* at *2. Similarly, unlike here, in *Vizio Inc. Consumer Priv. Litig.*, 238 F. Supp. 3d 1204 (C.D. Cal. 2017), the complaint had "no textual explanation" of how an interception might occur and, instead, relied on a single "inscrutable graphic." *Id.* at 1228. Here, Plaintiff's provides detail allegations about the function of the Website, the Third Parties' tracking technologies and how the interceptions occurred. *See* Compl. ¶¶ 20-60.

### 4. Plaintiff Alleges Defendant Aided Google and TikTok's Wiretapping

Defendant argues "Plaintiff has not alleged that Google and TikTok violated the first, second, or third clauses of CIPA[.]"[3] MTD at 18. This blatantly ignores the allegations in the Complaint. The Complaint describes in detail the tracking technologies of Google and TikTok and how they used that technology to intercept the confidential communications of Plaintiff and Class Members. *See* Compl. ¶¶ 2, 6, 20-60, 75-77, 79. Defendant's conclusory argument that "all of Plaintiff's allegations relate to Call-On-Doc's actions, not Google's or TikTok's actions" (MTD at 18) improperly ignores Plaintiff's actual allegations.

---

[3] Of note, this conclusory sentence is the only time in Defendant's Motion that it argues Google and TikTok did not violate Clause Three of CIPA §631(a). Without authority or analysis to support this argument, it has been waived. *United States v. Hunter* 739 F.3d 492, 495 (10th Cir. 2013) (cursory argument not meaningfully developed by any analysis or citation is deemed waived).

OPPOSITION TO MOTION TO DISMISS                    CASE NO. 3:24-CV-02095-GPC-KSC

Defendant next argues that Google and TikTok each "operate as a facilitator for website visitor communication" and, thus, do not trigger liability under Clause Four of CIPA § 631(a). This, again, ignores the clear allegations in the Complaint.

As a threshold matter, Defendant does not explain how Google or TikTok "facilitate website visitor communication." Nothing in the Complaint indicates either of the wiretaps are necessary for any function of Website operation.

In all events, the Complaint explicitly alleges that Google and TikTok could use – and did use – intercepted communications for their own independent purposes, including to compile datasets for targeted advertising. Compl. ¶¶ 28-32 (description of Google Analytics and how Google uses information for its own purposes); ¶ 38 ("Google then viewed each and every piece of intercepted information, processed it, and assembled it for use in the advertising services detailed above."); ¶ 41 ("In addition to helping companies like Defendant make better use of [its] own customer information, Google aggregates the intercepted information with the information collected from all sites containing Google Analytics to track users across multiple websites and platforms, which increases the value of Google's advertising services when they are offered to other companies."); ¶¶ 43-47 (description of TikTok's advertising services); ¶ 49 ("When the TikTok Pixel is used on a website, it is not like a tape recorder or a "tool" used by one party to record the other. Instead, the TikTok Pixel involves TikTok, a separate and distinct third-party entity from the parties in the conversation, using the TikTok Pixel to eavesdrop on, record, extract information from, and analyze a conversation to which it is not a party. This is so because TikTok itself is collecting the content of any conversation. That information is then analyzed by TikTok before being provided to any entity that was a party to the conversation (like Defendant)."); ¶ 51 ("In practice, this means the information collected is used to: (i) analyze trends in consumer behavior based on data collected from websites across the internet that TikTok can then use when providing targeted advertising to other companies; (ii) create consumer profiles of specific users,

18

1  allowing TikTok to sell future customers targeted advertising to consumers with
2  specific profile characteristics; and (iii) develop new TikTok Business products and
3  services, or improve pre-existing TikTok Business products and services."); ¶ 56
4  (TikTok [] viewed each and every piece of intercepted information, processed it, and
5  assembled it into data sets to target Plaintiff and Class Members with advertising.").

6  Defendant's reliance on *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831
7  (N.D. Cal. 2021) and *Yale v. Clicktale, Inc.*, 2021 WL 1428400, at *3 (N.D. Cal.
8  Apr. 15, 2021) (which explicitly followed *Graham*) (MTD at 18), are misplaced. The
9  court in *Graham* itself made a distinction between the company at issue in that case
10 and companies that "that partner[] with e-commerce sites to intercept visitor data and
11 create marketing databases of consumer information." *Graham*, 533 F. Supp. 3d at
12 832. As demonstrated above, the allegations here describe the latter type of
13 company.

14 Further, a growing majority of courts have disagreed with the ruling in
15 *Graham*, finding "[e]avesdropping on a conversation at the time it occurs is a
16 violation of Section 631, even if done for the benefit of a party to the conversation."
17 *Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 981 (C.D. Cal. 2023);
18 *see also Yockey*, 688 F. Supp. 3d at 972; *Balletto v. Am. Honda Motor Co.*, 2023 WL
19 7026931, at *2 (N.D. Cal. Oct. 24, 2023) (same); *D'Angelo v. Penny OpCo, LLC*
20 *d/b/a JCPenney*, 2023 WL 7006793, at *7-8 (S.D. Cal. Oct. 24, 2023) (same).

### B.    Plaintiff States a CMIA Claim

#### 1.    The Complaint Alleges the Conduct Occurred in California

23 In seeking to avoid CMIA liability, Defendant recycles its argument above,
24 contending that Plaintiff does not allege the conduct occurred in California. MTD at
25 19. As discussed in Argument § III.A.1, above, the Complaint alleges the harm
26 occurred in California.

#### 2.    Defendant Is a "Provider of Health Care"

28 Defendant further argues that Plaintiff fails to state a CMIA claim because

19

Defendants is not a "provider of health care" as defined under the CMIA. MTD at 19-20. The argument lacks merit.

Defendant provides no analysis as to why a website that allows patients to book telehealth appointments and ships them tests for various medical conditions does not qualify as a "provider of healthcare." *See id.* While Defendant cherry-picks one of many definitions of a "provider of healthcare" set forth in the CMIA (Cal. Civ. Code § 56.06) (MTD at 19), it ignores that it qualifies under several of the other definitions listed in the same code section.

For example, the full definition in Cal. Civ. Code § 56.06(b) defines a provider of healthcare as:

> [a]ny business that offers software or hardware to consumers, including a mobile application or other related device that is designed to maintain medical information in order to make the information available to an individual or a provider of health care at the request of the individual or a provider of health care, for purposes of allowing the individual to manage the individual's information, **or for the diagnosis, treatment, or management of a medical condition of the individual.**

Cal. Civ. Code § 56.06(b) (emphasis added). Defendant's Website is software that is "designed to maintain medical" in connection with telehealth appointments and medical tests, which are used for "diagnosis, treatment [and] management of a medical condition."

In addition, a company is defined as a "provider of healthcare" if it "offers a reproductive or sexual health digital service to a consumer for the purpose of allowing the individual to manage the individual's information, or for the diagnosis, treatment, or management of a medical condition. Cal. Civ. Code § 56.06(e). Defendant's offering of testing for sexually transmitted infections, such as HIV, cause it to be covered under this definition. Compl. ¶ 21.

### 3.    Plaintiff Alleges the Disclosure of Medical Information

Defendant next contends that Plaintiff's allegations are "insufficient to establish that *Plaintiff's* medical information is in fact at issue." MTD at 21

20

(emphasis in original). Not so.

The CMIA states that a "provider of health care . . . shall not disclose medical information regarding a patient of the provider of health care . . . without first obtaining an authorization." Cal. Civ. Code § 56.10(a). "'Medical information' means **any** individually identifiable information, in electronic or physical form . . . . regarding a patient's **medical history**, mental health application information, **mental or physical condition**, or **treatment**." Cal. Civ. Code § 56.05(i) (emphasis added).

California courts have interpreted the CMIA to require disclosure of individually identifiable information that has a substantive medical treatment nexus. *See, e.g.*, *Colleen M. v. Fertility & Surgical Assocs. Of Thousand Oaks*, 132 Cal. App. 4th 1466, 1472 (Cal. Ct. App. 2005) (distinguishing between disclosing that a person is a patient of a particular healthcare facility and disclosing the nature of the patient's treatment); *cf. Eisenhower Med. Ctr. v. Superior Ct.*, 226 Cal. App. 4th 430, 434-36 (Cal. Ct. App. 2014) (explaining that the compromised information amounted only to "individually identifiable information" because it did not show specific medical concerns or treatments). Thus, while the fact that a person was a patient at a particular facility may not communicate substantive information regarding a medical condition, treatment, or history, revealing the **nature** of the treatment, as is the case here, does. *Colleen M.*, 132 Cal. App. 4th at 1472.

*St. Aubin* is instructive. There, as here, the website at issue allowed patients to "book appointments to access medical care and manage their treatment or diagnosis of medical conditions." 2024 WL 4369675 at *1. The court found that the defendant had disclosed medical information as defined by the CMIA when the information disclosed included: "(1) the reason patients booked a medical appointment and the location for those appointments; and (2) patients' identifiable information . . . that could be used to personally identify patients." *Id.* at *9.

So too here. Plaintiff alleges she visited the Website "to seek treatment for various health conditions, including an upper respiratory infection." Compl. ¶ 5.

21

Plaintiff further alleges that in order to receive treatment via Defendant's Website, she had to select a condition as the reason for her appointment. *Id*. By embedding the tracking technologies into the Website, Defendant allowed Plaintiff's medical information, along with her named, email address and phone number, to be disclosed to the Third Parties, including Google and TikTok. *Id*. ¶¶ 34, 37, 54-55. With respect to Google, the information disclosed included Plaintiff's responses to the intake questionnaire Plaintiff filled out via the Website. *Id*. ¶ 34.

Notably, Defendant's "*compare*" cite (MTD at 21-22) highlights the sufficiency of Plaintiff's allegations. This case is more similar to *St. Aubin*, 2024 WL 4369675, at *2, and *Marden v. LMND Med. Group, Inc.*, 2024 WL 4448684, at *4 (N.D. Cal. July 3, 2024), where the nature of the medical treatment was disclosed, than *M.G. v. Therapymatch, Inc.*, 2024 WL 4219992, at *3 (N.D. Cal. Sept. 16, 2024), or *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1064 (C.D. Cal,. 2024), where the disclosure of such information was not alleged. MTD at 21-22.

Defendant's hair-splitting regarding the affirmative act of disclosure is similarly unavailing. MTD at 22. Plaintiff's allegations and the reasonable inferences therefrom sufficiently establish that the "affirmative act" of disclosure is Defendant's intentional loading of tracking technologies onto its Website to allow its patients' medical information to be made available to the Third Parties. Compl. ¶ 33 ("Defendant intentionally embedded and configured Google Analytics on all pages where users entered PII and PHI[.]"); ¶ 52 ("Defendant intentionally embedded and installed the TikTok Pixel on all pages where users entered PII and PHI[.]"). This is enough to support a CMIA claim. *St. Aubin*, 2024 WL 4369675, at *9-10.[4]

## C.    Plaintiff States a Constitutional Invasion of Privacy Claim

Finally, Defendant argues Plaintiff's claims for violation of the California Constitution's right to privacy and the common law intrusion upon seclusion fail.

---

[4] Plaintiff only brings her CMIA claim under Cal. Civ. Code § 56.10, not § 56.36 as Defendant contends. MTD at 22-24.

MTD at 24. It is Defendant's argument that fails.

To state a claim for invasion of privacy, Plaintiff must allege: "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *Facebook Tracking*, 956 F.3d at 601. Plaintiff has done so.

First, Defendant, once again, misstates that Plaintiff fails to allege that the harm at issue occurred in California. MTD at 25. As discussed in Argument § III.A.1, above, that is not the case.

Second, Defendant's cursory contention that "Plaintiff did not allege what of her personal information was disclosed, a serious invasion of the privacy interest, or an intrusion that is highly offensive" (MTD at 25) is both undeveloped and wrong. As described above, Plaintiff alleges her selection for the condition for which she sought treatment and her answers to the intake questionnaire were intercepted by Google and TikTok. Compl. ¶ 5.

"It is well-settled under California law that, although not absolute, people have a privacy interest in their 'medical history and information.'" *Ojeda v. Kaiser Permanente Int'l., Inc.*, 2022 WL 18228249, at *6 (C.D. Cal. Nov. 29, 2022). Plaintiff properly pleads a specific legally protected privacy interest — namely, an interest in: "(1) precluding the dissemination and/or misuse of [her] sensitive, confidential communications and protected health information; and (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to visit and interact with various internet sites without being subjected to wiretaps without Plaintiff's and Class Members' knowledge or consent." Compl. ¶ 92. Therefore, Plaintiff has alleged a specific privacy interest in her medical information.

Further, Defendant has no valid basis for arguing that its invasion of privacy was not highly offensive. Notably, Defendant ignores a host of recent cases that have held that surreptitious data collection meets the "highly offensive" requirement — even when the data at issue was only browsing data, as opposed to the highly-

23

1   sensitive health information at issue here. *See, e.g.*, *Rodriguez v. Google LLC*, 2021

2   WL 2026726, at *8 (N.D. Cal. May 21, 2021) (holding the interception of browsing

3   data was highly offensive given that Google "set an expectation that it would not

4   save plaintiffs' activity on apps") (internal quotations omitted); *Brown v. Google*

5   *LLC*, 525 F. Supp. 3d 1049, 1079-80 (N.D. Cal. 2021) (finding the data collections to

6   be highly offensive because Google's "representations regarding private browsing

7   mode could have led users to assume that Google would not view their activity when

8   in private browsing mode"); *Calhoun v. Google LLC*, 526 F. Supp. 3d at 631 (N.D.

9   Cal. 2021) (finding Google's actions highly offensive because Google's

10  "representations regarding Chrome's sync function could have led users to assume

11  that Google would not receive the personal information at issue . . . while

12  unsynced").

13          Given that this case involves the disclosure of sensitive health information, it

14  is nonsensical for Defendant to contend that the wiretapping of such information

15  would not be highly offensive. *Regents*, 672 F. Supp. 3d at 820 ("Personal medical

16  information is understood to be among the most sensitive information that could be

17  collected about a person."); *In re Ambry Genetics Data Breach Litigation* 567 F.

18  Supp. 3d 1130, 1143 (C.D. Cal. 2021) (even negligent disclosure of medical

19  information is "more likely to constitute an 'egregious breach of the social norms'

20  that is 'highly offensive'"); *Stasi v. Inmediata Health Group Corp.* 501 F. Supp. 3d

21  898, 926 (S.D. Cal. 2020) (disclosure of medical information "constitutes a serious

22  invasion of privacy").

23          Defendant cites no caselaw for its contention that Defendant could not intrude

24  on Plaintiff's seclusion. MTD at 25. As demonstrated above, Plaintiff has a

25  reasonable privacy interest, and Defendant's conduct, disclosing her medical

26  information, was highly offensive. This is sufficient.

27                          **CONCLUSION**

28          For the foregoing reasons, Defendant's Motion should be denied.

24

Dated: April 25, 2025

**BURSOR & FISHER, P.A**.

By:  _/s/ Joshua R. Wilner_

Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: jwilner@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: 646-837-7150
Facsimile: (212) 989-9163
E-Mail: pfraietta@bursor.com

**DRURY LEGAL, LLC**
Scott R. Drury (State Bar No. 355002)
6 Carriage Lane
Highwood, Illinois 60040
Telephone: (312) 358-8225
E-MAIL: scott@drurylegal.com

*Attorneys For Plaintiff*

OPPOSITION TO MOTION TO DISMISS            CASE NO. 3:24-CV-02095-GPC-KSC