UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, individually and on behalf of all others similarly situated,<br><br>                                    Plaintiff,<br><br>v.<br><br>CALL-ON DOC, INC.,<br><br>                                    Defendant. | Case No.:  24cv2095-GPC(KSC)<br><br>**ORDER**<br><br>**(1) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS, [DKT NO. 10]; AND**<br><br>**(2) GRANTING DEFENDANT'S MOTION TO COMPEL COMPLIANCE WITH RULE 10(A), [DKT. NO. 11.]** |

Before the Court is Defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1), lack of personal jurisdiction pursuant to Rule 12(b)(2), and failure to state a claim pursuant to Rule 12(b)(6).  (Dkt. No. 10.)  Plaintiff filed an opposition on April 25, 2025.  (Dkt. No. 13.)  Defendant filed a reply on May 9, 2025.  (Dkt. No. 16.)  Defendant also filed a motion to compel compliance with Rule 10(a) which is fully briefed.  (Dkt. Nos. 11, 14, 17.)  The Court finds that the matter is appropriate for decision without oral argument pursuant to Local Civ. R. 7.1(d)(1).  Based on the reasoning below, the Court GRANTS

in part and DENIES in part Defendant's motions to dismiss.  The Court also GRANTS Defendant's motion to compel compliance with Rule 10(a).

## Background

Plaintiff Jane Doe ("Plaintiff") filed a purported class action complaint against Defendant Call-On-Doc, Inc. ("Call-On-Doc" or "Defendant") alleging violations of the (1) California Invasion of Privacy Act ("CIPA"), Cal. Penal Code section 631; (2) California Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code section 56.10; and (3) invasion of privacy under California's Constitution and common law intrusion upon seclusion.  (Dkt. No. 1, Compl.)

According to the complaint, Call-On-Doc provides telehealth services where patients can consult with physicians from the convenience of their own homes and order tests for medical conditions such as diabetes, cholesterol, thyroid, kidney and liver problems, STD, and other conditions.  (*Id*. ¶¶ 20, 21.)  When using the website, patients must select the condition they are seeking treatment.  (*Id.* ¶ 22.)  Once a condition is selected, patients are asked to answer a series of intake questions that include personal and health related questions such as "their full name, gender, height, weight, symptoms, dates of exposure for certain contagious diseases and sexually transmitted infections, pregnancy status, breastfeeding status, medications, and surgical history."  (*Id.* ¶¶ 23, 25.)  Once the personally identifying information ("PII") and protected health information ("PHI") are entered, patients are able to make telehealth appointments and enter their payment information to purchase the services or tests.  (*Id.* ¶¶ 6, 26.)

## A.    Google Analytics

Google Analytics collects data to provide insight into businesses which is used for marketing and advertising.  (*Id.* ¶¶ 28, 29.)  The Google Analytics Tracking code can be installed into websites to "track page visits, button clicks, text entered into websites and other actions taken by website visitors" and is connected to the Google Analytics platform.  (*Id.* ¶ 27.)  Google Analytics provides a complete understanding of customers across devices and platforms to understand customer journey to improve marketing.  (*Id.*

2

¶¶ 30, 31.)  Plaintiff claims that Defendant intentionally embedded and configured Google Analytics on all pages where users enter PII and PHI.  (*Id.* ¶ 33.)  Google Analytics is also configured on each screen of the checkout process on Defendant's website.  (*Id.* ¶ 35.)

Google intercepts PII, PHI and other confidential information in real time when patients enter information on Defendant's website, views each piece of information, processes it and assembles it for use in its advertising services.  (*Id.* ¶¶ 37, 38.)  This information is valuable to Defendant because it improves effectiveness of its advertising, allows it to target users and provides performance information for ad campaigns.  (*Id.* ¶ 40.)  Further, Google aggregates intercepted information with information collected from all sites containing Google Analytics to track users across multiple websites and platforms which increase the value of Google's advertising services.  *(Id.* ¶ 41.)  Google has the ability to use intercepted data from websites for its own purposes and assembles the data collected to target users with advertising.  (*Id.* ¶ 32.)  Defendant's agreement to aid Google in wiretapping patients' PII and PHI is done to increase advertising efficiency resulting profits to both parties.  (*Id.* ¶ 42.)

**B.    TikTok Pixel**

TikTok offers "TikTok Pixel" that helps businesses track performance of their ads by simultaneously sending information from business' website to TikTok which then uses that information to optimize ad campaigns on TikTok and across the internet.  (*Id.* ¶ 43.)  TikTok Pixel can be "plugged in" to any website to capture "events."  (*Id.* ¶ 44.)  TikTok Pixel collects the "Metadata and button clicks", a timestamp for the event, and the visitor's IP address which is simultaneously sent to TikTok.  (*Id.* ¶ 46.)

TikTok Pixel is part of the "TikTok for Business" product line that allows for the delivery of a more effective targeted advertisements based on the collection of user information.  (*Id.* ¶ 45.)  TikTok for Business involves entering into partnerships with various companies and surveilling communications on their partners' websites with the TikTok Pixel.  (*Id.* ¶ 47.)  When websites use TikTok's services, TikTok, a separate and

distinct third-party entity, directly receives the electronic communications that website visitors enter into search bars, chat boxes and button selections in real time. (*Id.* ¶¶ 48, 49.)

TikTok, a separate and distinct third-party entity, uses TikTok Pixel to eavesdrop on, record, extract information from, and analyze a conversation to which it is not a party. (*Id.* ¶ 49.) The information is analyzed by TikTok before being provided to any entity that was a party to the conversation, such as Defendant. (*Id.*) TikTok also has the capability to use the information for its own purposes and used to: "(i) analyze trends in consumer behavior based on data collected from websites across the internet that TikTok can then use when providing targeted advertising to other companies; (ii) create consumer profiles of specific users, allowing TikTok to sell future customers targeted advertising to consumers with specific profile characteristics; and (iii) develop new TikTok Business products and services, or improve pre-existing TikTok Business products and services." (*Id.* ¶¶ 50, 51.)

Plaintiff alleges that Defendant intentionally embedded and installed the TikTok Pixel on all pages where users enter their PII and PHI. (*Id.* ¶ 52.) Each time a user visits a page on Call-On-Doc's website, TikTok Pixel automatically sends a transmission of the URL to TikTok. (*Id.* ¶ 54.) Further, TikTok Pixel intercepts and collects "hashed" versions of patients' email addresses and phone numbers. (*Id.* ¶ 55.) A patient's information is intercepted by TikTok in real time as it is entered into the website. (*Id.* ¶ 56.) TikTok then processes and assembles it into data sets to target Plaintiff with advertising. (*Id.*) The analyzed information provided by TikTok is valuable to Defendant as it improves the effectiveness of its advertisements allowing for the targeting of users and provides performance information for ad campaigns. (*Id.* ¶ 58.) In addition, TikTok aggregates the intercepted information with information collected from all sites containing the TikTok Pixel to track users across multiple websites and platforms which increases the value of TikTok's advertising services when offered to other companies. (*Id.* ¶ 59.) As such, Defendant's agreement to aid TikTok in wiretapping Plaintiff's PII

4

and PHI is done to increase advertising efficiency resulting in profits to both parties.  (*Id.* ¶ 42.)

## C.    Plaintiff's Experience

Plaintiff alleges that she visited Defendant's website several times in 2023 and 2024, and as recently as March 2024, to seek treatment for various health conditions, including an upper respiratory infection.  (*Id.* ¶ 5.)   She selected her medical condition on Defendant's website and answered a series of questions related to her physical health with the understanding her medical information would be reviewed by a doctor in order to treat her symptoms.  (*Id.*)  Without her knowledge or consent, Defendant aided and assisted Google and TikTok with intercepting her PII and PHI and related confidential information.  (*Id.* ¶¶ 6, 42, 60.)  After seeking treatment for an upper respiratory infection on the website, she began receiving targeting advertisements related to treating pneumonia on Google and other internet sites.  (*Id.* ¶ 7.)  Plaintiff claims Defendant breached its duties of confidentiality and unlawfully disclosed her PII and PHI.

Defendant filed a motion to dismiss for lack of subject matter jurisdiction pursuant To Rule 12(b)(1), lack of personal jurisdiction pursuant to Rule 12(b)(2), and for failure to state a claim pursuant to Rule 12(b)(6) which is fully briefed.  (Dkt. Nos. 10, 13, 16.)  Defendant also filed a motion to compel compliance with Rule 10(a) which is fully briefed.  (Dkt. Nos. 11, 14, 17.)

## Discussion

## A.    Subject Matter Jurisdiction Under Rule 12(b)(1)

### 1.    Legal Standard

Rule 12(b)(1) provides for dismissal of a complaint for lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "A Rule 12(b)(1) jurisdictional attack may be facial or factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  Here, Defendant appears to launch a facial attack on subject matter jurisdiction because it relies on the allegations in the complaint.

1  "In a facial attack, the challenger asserts that the allegations contained in a

2  complaint are insufficient on their face to invoke federal jurisdiction." *Id.*  The Court

3  "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting

4  the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's

5  favor, the court determines whether the allegations are sufficient as a legal matter to

6  invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)

7  (citation omitted).  Ultimately, Plaintiff has the burden to demonstrate that subject matter

8  jurisdiction exists.  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377

9  (1994).

10      **2.    Article III Standing**

11      Article III, Section 2 the United States Constitution requires that a plaintiff have

12  standing to bring a claim.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

13      "[T]he 'irreducible constitutional minimum of [Article III] standing'" requires that

14  "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the

15  challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable

16  judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan*, 504

17  U.S. at 560).  "To establish injury in fact, a plaintiff must show that he or she suffered 'an

18  invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or

19  imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560).

20  The Supreme Court noted that concreteness is quite distinct from particularization.  *Id.*

21  An injury is "particularized" if it affects "the plaintiff in a personal and individual way."

22  *Id.*  In addition, for an injury to be "concrete", it must be "de facto," meaning that it is

23  "real" and not "abstract."  *Id.*  "[I]ntangible harms" can also be "concrete" such as

24  "reputational harms, disclosure of private information, and intrusion upon seclusion" or

25  those "specified by the Constitution itself." *TransUnion LLC v. Ramirez*, 594 U.S. 413,

26  425 (2021).

27      To survive a facial Rule 12(b)(1) challenge to standing, a plaintiff "must 'clearly . .

28  . allege facts demonstrating' each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338

24cv2095-GPC(KSC)

(2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan*, 504 U.S. at 561 (citation omitted); *Cal. Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1100 (9th Cir. 2023) (when "standing is challenged on the basis of the pleadings," we must "accept as true all material allegations of the complaint" and "construe the complaint in favor of the complaining party.").  The court may also draw reasonable inferences based on facial plausibility of allegations in the complaint.  *See Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 523-25 (9th Cir. 2023) (noting that, under *Spokeo, Inc.* [ ] "[a]t the pleading stage, plaintiffs must clearly allege facts demonstrating each element" of Article III standing and that the *Iqbal*[1] pleading standards therefore apply in assessing the facial adequacy of allegations of standing); *Jones v. L.A. Central Plaza LLC*, 74 F.4th 1053, 1056 n.1 (9th Cir. 2023) *(Iqbal's* pleading standard applies to evaluate facial challenges to standing allegations).

       "In a class action, standing is satisfied if at least one named plaintiff meets the requirements."  *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). The "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong."  *Spokeo*, 578 U.S. at 338 n.6 (internal quotation marks and citation omitted).

   **3.    Analysis**

       Defendant argues that Plaintiff has failed to allege an injury in fact because she fails to identify the contents of the communications allegedly intercepted and her summary claim that she has a protectable interest in her "personal information" is not

---

[1] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'").

1    sufficient to meet the pleading standard.  (Dkt. No. 10-1 at 18-20.[2])  Plaintiff disagrees

2    arguing that the allegations in the complaint create a reasonable inference that Plaintiff

3    answered a series of question concerning her physical health condition when she sought

4    treatment on Defendant's website.  (Dkt. No. 13 at 15-16.)

5          The complaint alleges that Plaintiff visited Defendant's website to seek treatment

6    for health conditions, including an upper respiratory infection.  (Dkt. No. 1, Compl. ¶ 5.)

7    As with all purchases and bookings on the website, she selected her medical condition

8    and answered questions related to her physical health.  (*Id.*)  According to the complaint,

9    when patients visit the website, once they click on their medical condition, they are

10   prompted to answer a number of intake questions asking for personal information,

11   including "their full name, gender, height, weight, symptoms, dates of exposure for

12   certain contagious diseases and sexually transmitted infections, pregnancy status,

13   breastfeeding status, medications, and surgical history."  (*Id.* ¶¶ 22-25.)  Only when all

14   the personal and health information are entered can patients can make a telehealth

15   appointment and enter their payment information to purchase the service or tests.  (*Id.* ¶

16   26.)  Plaintiff alleges she sought treatment for an upper respiratory infection and

17   afterwards, she began receiving targeted advertisement related to pneumonia treatment on

18   Google and other internet sites.  (*Id.* ¶¶ 5, 7.)  Further, the complaint alleges that by

19   embedding Google Analytics and TikTok Pixel into its website, Defendant allowed for

20   the interception of Plaintiff's PII and PHI in real time as Plaintiff was entering her

21   information into the website.  (*Id.* ¶¶ 38, 56.)

22         The parties especially disagree as to whether Plaintiff has met the pleading

23   standard on a motion to dismiss based on Article III standing.  Because Plaintiff alleges

24   she was seeking medical treatment on Defendant's website, she necessarily had to answer

25   the intake questions relating to her PII and PHI.  Invasion of the right to privacy, a legally

26

27   ───────────────

28   [2] Page numbers are based on the CM/ECF pagination.

protected interest that is concrete and particularized, "has long been actionable at common law" and "encompass[es] the individual's control of information concerning his or her person." *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589, 607 (9th Cir. 2020), *cert denied* 141 S. Ct 1684 (Mar. 22, 2021).[3]  The complaint's allegations create reasonable inference that Plaintiff provided her PII and PHI, including her "full name, gender, height, weight, symptoms, dates of exposure for certain contagious diseases and sexually transmitted infections, pregnancy status, breastfeeding status, medications, and surgical history." (*See* Dkt. No. 1, Compl. ¶ 25.)  Moreover, Plaintiff claims her right to privacy was violated when her PII and PHI were intercepted by third parties on Defendant's website, an injury that is concrete and particularized.  *See A.S. v. SelectQuote Ins. Servs.,* No. 3-23-cv-2258-RBM-MSG, 2024 WL 3881850, at *8 (S.D. Cal. Aug. 19, 2024) ("Because each named plaintiff has alleged the interception of personal or sensitive information, including his or her name, date of birth, gender, email address, and health information . . . the class plaintiffs have alleged facts sufficient to establish standing at this stage.").  As such, the Court concludes that Plaintiff has plausibly alleged an injury in fact and DENIES Defendant's motion to dismiss for lack of Article III standing.

/ / /

/ / /

/ / /

---

[3] Defendant appears to question whether *In re Facebook, Inc*. is still good law because it was decided prior to *TransUnion*, which held that "[o]nly those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." 594 U.S. at 427, which was decided on June 25, 2021.  (Dkt. No. 10-1 at 19.)  *In re Facebook* was not expressly overruled and no subsequent Ninth Circuit panel that has relied on *In re Facebook* has expressed any doubt as to its precedential value.  Further, the United States Supreme Court denied petition for writ of certiorari in *In re Facebook, Inc*. on March 22, 2021, three months prior to the *TransUnion* decision.  The Court was likely considering these overlapping issues when it denied certiorari in *In re Facebook, Inc*.  Nonetheless, in this case, as discussed above, Plaintiff alleges more than a statutory violation.

**B.    Personal Jurisdiction under Rule 12(b)(2)**

  **1.    Legal Standard**

  "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction." *In re W. States Wholesale Nat. Gas Antitrust Litig. v. Oneok, Inc.,* 715 F.3d 716, 741 (9th Cir. 2013).  If the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make "a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Bryton Purcell LLP v. Recordon & Recordon*, 575 F.3d 981, 985 (9th Cir. 2009).  The court inquires "whether [the plaintiff]'s pleadings and affidavits make a prima facie showing of personal jurisdiction." *Dole Food Co. v. Watts, Inc*., 303 F.3d 1104, 1108 (9th Cir. 2002).  On a prima facie case, the court considers uncontroverted allegations in the complaint as true and the court resolves all contested facts in favor of the non-moving party. *In re W. States*, 715 F.3d at 741; *AT & T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (*same*).

  **2.    Personal Jurisdiction**

  "Where, as here, no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits." *Marvix Photo, Inc. v. Brand Techs., Inc.,* 647 F.3d 1218, 1223 (9th Cir. 2011) (citations omitted).  California's long-arm statute is "coextensive with the outer limits of due process under the state and federal constitutions, as those limits have been defined by the United States Supreme Court." *Republic Int'l Corp. v.  Amco Eng'rs, Inc.,* 516 F.2d 161, 167 (9th Cir. 1976) (quoting *Threlkeld v. Tucker,* 496 F.2d 1101, 1103 (9th Cir. 1974)).  As such, the Court need only consider the requirements of due process.  Due process requires that a nonresident defendant has "minimum contact" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Personal jurisdiction can be either "general" or "specific." *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S.

408, 415-16 (1984).  Here, the parties dispute whether the Court has specific personal jurisdiction over Defendant.[4]

### 3.    Specific Personal Jurisdiction

Specific jurisdiction exists when a case "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Helicopteros Nacionales,* 466 U.S. at 414 n. 8. The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant "focuses on 'the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore,* 571 U.S. 277, 284 (2014).  Specific jurisdiction is limited to ruling on "issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation omitted).  "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the States." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1771, 1781 (2017).  A court must look "to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285.  Therefore, "mere injury to a forum resident is not a sufficient connection to the forum." *Id.* at 290.  Rather, "an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Id.*  Specifically, a court may exercise specific jurisdiction over a defendant only where "the defendant's suit-related conduct" "create a substantial connection with the forum [s]tate." *Williams v. Yamaha Motor Co. Ltd*., 851 F.3d 1015, 1022-23 (9th Cir. 2017) (quoting *Walden*, 571 U.S. at 284-85).

---

[4] Plaintiff does not oppose Defendant's argument that she has failed to allege general personal jurisdiction, which requires she allege that Defendant is "essentially at home" in California.  (Dkt. No. 10-1; Dkt. No. 13.)  "[F]ailure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue." *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp*., 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) (internal quotation and citation omitted); *Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n. 4 (9th Cir. 2005) (plaintiff abandoned claims by not raising them in opposition to motion for summary judgment). Therefore, Plaintiff has waived the issue of whether the court has general jurisdiction over Defendant.

The Ninth Circuit conducts the following three-prong test to determine whether a non-resident defendant is subject to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 802 (9th Cir. 2004) (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).  "All three prongs must be satisfied [for a court] to assert personal jurisdiction[.]"  *LNS Enters. LLC v. Continental Motors, Inc.*, 22 F.4th 852, 859 (9th Cir. 2022).  "The plaintiff bears the burden of satisfying the first two prongs of the test."  *Id.*  If the plaintiff meets that burden, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable."  *Id.* (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).  Defendant moves to dismiss on the first two prongs.

### a.    Second Prong - Arise Out of or Relate to Defendant's Forum-Related Activities

As a threshold issue, Defendant argues that the second prong has not been satisfied because Plaintiff fails to plead she was in California when she visited Defendant's website.  (Dkt. No. 10-1 at 16.)  Plaintiff does not directly address this prong and, instead, claims that she has circumstantially alleged the activities occurred in California.  (Dkt. No. 13 at 18-19, 25, 29.)  She asserts that by alleging that she is a California resident and that people usually do not travel out-of-state to make telehealth appointments, it is reasonable to infer that she was in California when she accessed Defendant's website and that the wiretapping occurred in California.  (*Id.* at 19.)

The Court disagrees with Plaintiff. The complaint, which was filed on November 7, 2024, alleges that Plaintiff is a citizen of California and visited the website several times in 2023 and 2024. (Dkt. No. 1, Compl. ¶ 4.) The complaint also alleges generally that "Defendant, when aiding and assisting the wiretapping, which occurred in California, intended to help Google and TikTok learn some meaning of the content in the URLs, the answers to intake questions, and the content the visitor requested." (*Id.* ¶ 76.) These two allegations do not create a reasonable inference that Plaintiff was in California when she accessed Defendant's website seeking treatment in 2023 or 2024. Therefore, because Plaintiff has not plausibly alleged that she was in California when she sought treatment on Defendant's website, she has not satisfied prong two requiring that she make a prima facie showing that her claims must arise out of or relate to Call-On-Doc's forum related activities. Therefore, the Court GRANTS Defendant's motion to dismiss for lack of specific personal jurisdiction.

Because Plaintiff will be granted leave to amend to allege she was in California at the time of the alleged conduct, the Court addresses Defendant's remaining arguments relating to specific personal jurisdiction in the interest of judicial efficiency.

On this second prong, Defendant also argues that even if Plaintiff claims she was in California at the time of the alleged conduct, she has not alleged that the alleged harm came from the sale of services but instead came from interacting with the website that was accessed prior to and regardless of any purchase. (Dkt. No. 10-1 at 17.) Plaintiff does not address this argument. (*See* Dkt. No. 13.)

A plaintiff's claims "must arise out of or relate to the defendant's contacts" with the forum. *Ford Motor Co., v. Montana Eighth Judicial Dist. Ct.*, 592 U.S. 351, 359 (2021). This means "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the States' regulations." *Id.* at 359-60. In *Briskin*, the Ninth Circuit concluded that the plaintiff's privacy related claims "arise out of" the defendant's contacts with the plaintiff's device which it allegedly knew was in California and also

"relate to" its California contacts because he alleged privacy injuries arising from the defendant's "installation of software onto unsuspecting Californians' devices and extracting personal data from them." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 760 (9th Cir. 2025). Similarly, in this case, Plaintiff's privacy claims arise from the disclosure of her PII and PHI arise out of Doc-On-Call's contacts with California by aiding in the interception and extraction of her PII and PHI and relate to her alleged privacy injuries. Therefore, as in *Briskin*, Plaintiff has made a prima facie showing that her claim "arise out of or relate to the defendant's forum-related contacts."

### b.    First Prong - Purposeful Direction

On the first prong, the Court applies the purposeful direction analysis for claims sounding in tort. *See Briskin*, 135 F.4th at 751 (applying purposeful direction in case involving privacy and data use violations). The Ninth Circuit applies the purposeful direction test enunciated in *Calder v. Jones*, 465 U.S. 783 (1984). *Schwarzenegger,* 374 F.3d at 802-03; *Axiom Foods, Inc. v. Acerchem Int'l, Inc*., 874 F.3d 1064, 1069 (9th Cir. 2017). Under the three-part *Calder* "effects" test to evaluate purposeful direction, Plaintiff must establish that the defendant allegedly "(1) committed an intentional act, (2) expressly aimed at the forum state, [and]  (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (citing *Calder*, 465 U.S. at 783). All three components must be met for a defendant to have purposefully directed its activities to the forum state. *Pakootas v. Teck Cominco Metals, Ltd*., 905 F.3d 565, 577 (9th Cir. 2018) (*Calder* imposes three requirements).

Defendant moves to dismiss on the second factor whether Defendant expressly aimed its conduct at the State of California.

### i.    Expressly Aimed at the Forum State

Defendant argues Plaintiff has not shown that it has expressly aimed its conduct at California because "something more" than an interactive website is required and the complaint does not present any allegations that Defendant targeted the California market.

(Dkt. No. 10-1 at 14.)  Plaintiff responds that the recent Ninth Circuit ruling in *Briskin v. Shopify, Inc*., 135 F.4th 739 (9th Cir. 2025) (*en banc*) controls.

In *Briskin*, the plaintiff filed a purported class action alleging privacy related torts against Shopify, a web-based payment platform, when it installed "cookies" on his iPhone, without his knowledge, when he made an online clothing purchase from a California retailer.  *Briskin*, 135 F.4th at 747.  During the process of facilitating a credit card transaction for a merchant, Shopify sends "executable JavaScript code to consumers' computers or mobile devices, which then load and execute the code to display the payment form."  *Id.*  At checkout, after the plaintiff entered his personal identifying information and credit card information and clicked "Pay now", the software code sent his name and payment details to Shopify's servers and stored his sensitive personal information indefinitely.  *Id.*

The Ninth Circuit's *en banc* panel vacated its prior opinion and held that Shopify "expressly aimed its conduct at California by extracting, maintaining and commercially distributing California consumers' personal data violating California laws."  *Id.* at 756. The court explained the expressly aimed prong is satisfied where Shopify's interactive platform "deliberately reached out beyond its home state by knowingly installing tracking software onto unsuspecting Californians' phones so that it could later sell the data it obtained, in a manner that was neither 'random, isolated, [n]or fortuitous.'"  *Id.* at 759 (citation omitted).  By analogy, the court explained that pre-internet, "there would be no doubt that the California courts would have specific personal jurisdiction over a third party who physically entered a California's home by deceptive means to take personal information from the Californian's files for its own commercial gain."  *Id.*   Additionally, the Ninth Circuit held that expressly aiming does not require a nationwide interactive website to have a "forum-specific focus" or "differential targeting."  *Id.* at 757-58.

The complaint alleges that Defendant offers telehealth services with physicians and sells medical tests such as for "diabetes, cholesterol, thyroid, kidney and liver problems and STDs".  (Dkt. No. 1, Compl. ¶¶ 20-21.)  Plaintiff claims that Defendant

24cv2095-GPC(KSC)

"intentionally embedded and configured Google Analytics and TikTok Pixel on all pages where users enter PII and PHI".  (*Id.* ¶¶ 33, 52.)  Once the PII and PHI is entered, this information is simultaneously intercepted by Google and TikTok and they view every piece of intercepted information, and process and assemble it for use in advertising services.  (*Id.* ¶¶ 34, 36, 38, 54, 56.)  Plaintiff further alleges that Defendant "aids, employs, agrees and conspires" with Google and TikTok to intercept communications containing PII and PHI for purposes of commercial profit.  (*Id.* ¶¶ 2, 42, 60, 75, 76, 79.)

Even though Google and TikTok allegedly conducted the interception, processing and assembly of data for use in advertising services, (*id.* ¶¶ 37, 38), Plaintiff, in this case, alleges that Call-On-Doc aided and assisted Google and TikTok to simultaneously intercept Plaintiff's PII and PHI, though her electronic device, by intentionally embedding and configuring their data processing platforms onto Defendant's website. Therefore, relying on *Briskin*, the Court concludes that Plaintiff has made a prima facie showing that Defendant knowingly and intentionally embedded and configured Google Analytics and TikTok Pixel on its website and expressly aimed its conduct at California by assisting them in the targeting of Plaintiff's device for its own personal gain.  *See Briskin*, 135 F.4th at 756.[5]

Defendant's reliance on *Fregoas v. Mashable, Inc.*, No. 25cv1094-CRB, 2025 WL 1083214, at *3 (N.D. Cal. Apr. 10, 2025) for the proposition that third party activities cannot establish personal jurisdiction over it is not persuasive.  There, the plaintiff

---

[5] Plaintiff also argues that the Court may exercise personal jurisdiction over Defendant based on the allegation that California patients can order physical tests for certain medical conditions and schedule live appointments relying on *Herbal Brands* where the court held that the "defendant's sale of a physical product to a consumer in the forum state via an interactive website constitutes conduct expressly aimed at a forum."  *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1095 (9th Cir. 2023).  Here, Plaintiff has not sufficiently alleged that she purchased any physical tests and has not provided authority that offering of services to California patients fall under the holding of *Herbal Brands*.  *See Freeman v. 3Commas Techs. OU*, Case No. 23-cv-00101-RFL, 2024 WL 1880147, at*3 (N.D. Cal. Mar. 25, 2024) ("As this case does not involve the sale of a physical product, *Herbal Brands* does not govern.").  Because the Court concludes that Defendant expressly aimed its conduct based on its aiding of interception of PII and PHI to third parties, the Court need not address Plaintiff's additional argument.

alleged that the defendant, a digital news and entertainment website, installed trackers on her computer without her consent and collected information such as "device type, browser type and unique and persistent identifiers" when she visited its website. *Id.* at *1. The trackers were operated by third parties and used by them to engage in targeted advertising. *Id.* The court concluded that the allegation that the defendant "knowingly enables the sale of Californians' information, which it obtains by installing trackers on website visitors' computers, and [ ] earns significant revenue as a result" was not sufficient to allege expressly aimed conduct at California residents. *Id.* The court also rejected the plaintiff's argument that trackers collect IP addresses which are provided to third parties stating that third party conduct cannot establish personal jurisdiction over it. *Id.* at *3.

First, *Fregoas* was decided prior to the *Briskin* case. Further, in this case, Plaintiff has provided a more robust allegation that Defendant, not knowingly but *intentionally* embedded and configured Google Analytics and TikTok Pixel onto its website and aided and conspired with Google and TikTok in intercepting a Californian's PII and PHI. (Dkt. No. 1, Compl. ¶¶ 33, 42, 52, 60.)

In conclusion, the Court GRANTS Defendant's motion to dismiss for lack of specific personal jurisdiction for failing to allege that Plaintiff was in California when she accessed Defendant's website but denies it as to other grounds raised by Defendant.

## C.    Motion to Dismiss for Failure to State a Claim under Rule 12(b)(6)

### 1.    Legal Standard

Rule 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) requires the Court to dismiss claims that fail to establish a cognizable legal theory or do not allege sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citation omitted). Under Rule 8(a)(2) a complaint must contain "a short and plain statement of the claim which entitles the pleader to relief." Fed. R. Civ. P. 8(a)(2).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

While the plausibility standard is not a probability test, it does require more than a mere possibility the defendant acted unlawfully. *Id.* at 556. "When evaluating a Rule 12(b)(6) motion, the Court must accept all material allegations in the complaint as true, and construe them in the light most favorable to the non-moving party." *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013) (citation omitted). When dismissal is appropriate, leave to amend should generally be given freely. *Chubb*, 710 F.3d at 956. However, if the plaintiff's proposed amendments would fail to cure the pleading's deficiencies and amendment would be futile, the Court may dismiss without leave. *Id.*

### 2.    CIPA, Cal. Penal Code section 631(a)

California's Invasion of Privacy Act provides liability for

[1] any person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or

18

[2] who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or

 [3] who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or

[4] who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by fine . . . .

Cal. Penal Code § 631(a).

The Supreme Court of California has explained section 631(a) as "three distinct and mutually independent patterns of conduct: [1] intentional wiretapping, [2] willfully attempting to learn the contents or meaning of a communication in transit over a wire, and [3] attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Tavernetti v. Superior Ct. of San Diego Cnty.,* 22 Cal. 3d 187, 192 (1978). In addition, "Section 631(a) . . . contains a fourth basis for liability, for anyone 'who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the' other three bases for liability." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021) (quoting Cal. Penal Code § 631(a).) The fourth clause of section 631(a) depends on establishing a violation of the first, second, or third clauses. *Id.* at 1137; *see Esparza v. UAG Escondido A1 Inc.*, Case No. 23cv0102 DMS(KSC), 2024 WL 559241, at *2 (S.D. Cal. Feb. 12, 2024) ("To state a claim under this clause, Plaintiff must allege [LivePerson] has violated one of the first three clauses of section 631(a), and that Defendant aided, agreed with, employed, or conspired with that person or entity to commit those unlawful acts.").

In opposition, Plaintiff explains that she is alleging a claim under the fourth clause based on violations of the second and third clauses of section 631(a). (*See* Dkt. No. 13 at 21 n.2.)

19

1

### a.    Conduct in California

2      First, Defendant argues that Plaintiff has failed to allege that she was in California

3 when she accessed Defendant's website.  (Dkt. No. 10-1 at 22.)  Plaintiff argues that she

4 has sufficiently alleged by reasonable inference that the alleged conduct occurred in

5 California.  (Dkt. No. 13 at 18-19.)

6      "The CIPA contains express geographical limitations."  *Yockey v. Salesforce, Inc.*,

7 745 F. Supp. 3d 945, 958 (N.D. Cal. 2024) (citing Cal. Pen. Code § 631).  To state a

8 CIPA claim, a plaintiff must allege that the interception took place in California.  *See*

9 *Hammerling v. Google LLC*, Case No. 21-cv-09004-CRB, 2022 WL 17365255, at *11

10 (N.D. Cal. Dec. 1, 2022) (dismissing CIPA claim because the plaintiffs did not plead that

11 the interception took place in California).  Neither party disputes this point but disagree

12 on whether Plaintiff has sufficiently alleged she was in California when the alleged

13 interception took place.

14      As discussed above on specific personal jurisdiction, Plaintiff has not plausibly

15 alleged that she was in California when she accessed Defendant's website seeking

16 treatment.  Therefore, the Court GRANTS Defendant's motion to dismiss the CIPA claim

17 on this basis.

18

### b.    Contents of Communication

19      Next, Defendant contends that Plaintiff failed to allege the "contents" of

20 communications to support a claim under CIPA because she does not allege what

21 information she communicated to Call-On-Doc.  (Dkt. No. 10 -1 at 22-23.)  Plaintiff

22 responds she has alleged affirmative statements regarding her medical condition and her

23 answers to medical intake questionnaires are "contents" of a communication under CIPA.

24 (Dkt. No. 13 at 19-20.)

25      CIPA "broadly prohibits the interception of wire communications and disclosure of

26 the contents of such intercepted communications."  *Tavernetti*, 22 Cal. 3d at 190.

27 Specifically, it prohibits the use of electronic means to "learn the contents or meaning of

28 any message, report, or communication" "without the consent of all parties to the

communication." Cal. Pen. Code § 631(a).  Those who aid another in violating this provision is subject to liability.  *See id.*  Sensitive and confidential medical information constitute "contents" as defined under CIPA.  *See Byars v. Goodyear Tire & Rubber Co*., 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023) (plaintiff stated a claim alleging contents by alleging that website visitors share sensitive personal information); *Cousins v. Sharp Healthcare*, 702 F. Supp. 3d 967, 976 (S.D. Cal. 2023) ("Plaintiffs allege that their data included personal search queries—such as specialty healthcare providers and treatments for medical conditions—and therefore plausibly conveyed content: their PHI.").

Here, as discussed above on Article III standing, Plaintiff has sufficiently alleged that nature of her communications with Doc-On-Call requiring her to answer questions relating to her PII and PHI such as "full name, gender, height, weight, symptoms, dates of exposure . . . medications, and surgical history" whenever anyone seeks treatment on Call-On-Doc's website.  (Dkt. No. 1, Compl. ¶¶ 23, 25.)  Thus, the Court DENIES Defendant's motion to dismiss based on the failure to allege the "contents" of the communications.

### c.    First Clause – Intentional Wiretapping.

Defendant argues that Plaintiff cannot allege a violation under the first clause of Penal Code section 631(a) because it does not apply to communications over the internet. (Dkt. No. 10-1 at 23-24.)  Plaintiff does not address this issue and concedes that she is not alleging a claim on this clause.  (Dkt. No. 13 at 21 n.2.)  Accordingly, the Court GRANTS Defendant's motion to dismiss the claim premised on the first clause of section 631(a) for failure to state a claim as unopposed.

### d.    Second Clause – Eavesdropping

Defendant next asserts that Plaintiff has failed to allege a violation of the second clause of Penal Code section 631(a) because she cannot establish that the alleged communication was "without the consent of all parties" since Defendant was a party to the communication with Plaintiff and she has not alleged the communication was

intercepted "while in transit." (Dkt. No. 10-1 at 25.) Plaintiff disagrees. (Dkt. No. 13 at 21-23.)

Clause two of section 631(a) applies if a party "willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state[.]" Cal. Penal Code § 631(a). The party exception provides that there is an exemption from liability for a person who was a "party to the communication." *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589, 607 (9th Cir. 2020). Therefore, "[a] party to a conversation is not liable under Section 631(a) for recording its own conversation." *Licea v. Vitacost.com, Inc.,* 683 F. Supp. 3d 1118, 1121 (S.D. Cal. 2023) (citing *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d at 607).

Here, because Call-On-Doc was a party to the conversation when Plaintiff accessed its website, it cannot be liable under the second clause of section 631(a). *See Valenzuela v. Nationwide Mutual Insurance Co.* 686 F. Supp. 3d 969, 982 (C.D. Cal. 2023) (dismissing claim under second clause of section 631(a) because the defendant was a party to the communication).

Plaintiff does not meaningfully oppose and her cited cases did not specifically address whether the defendants, who are website operators, are liable under the second clause of section 631(a). (*See* Dkt. No. 13 at 21.) Instead, Plaintiff is alleging a violation of the fourth clause for aiding and conspiring with Google and TikTok to simultaneously to track, intercept and receive patients' PII and PHI through its website, (*See* Dkt. No. 13 at 21 n.2.), a distinct claim which the Court addresses below. Accordingly, the Court GRANTS Defendant's motion to dismiss the second clause of section 631(a) claim under the party exception rule.

Defendant also argues that Plaintiff has failed to allege the contents of communication were intercepted "in transit." (Dkt. No. 10-1 at 27.) Plaintiff opposes

contending she alleges that her communications were intercepted while "in transit" prior to reaching its final destination.   (Dkt. No. 13 at 22-23.)

To satisfy the "in transit" requirement, communications "must be acquired during transmission, not while . . . in electronic storage."  *Konop v. Hawaiian Airlines, Inc*., 302 F.3d 868, 878 (9th Cir. 2002) (interpreting the "in transit" language of the Wiretap Act); *see NovelPoster v. Javitch Canfield Grp*., 140 F. Supp. 3d 938, 954 (N.D. Cal. 2024) (applying *Konop* in the context of a CIPA claim).  "[A]llegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement."  *Esparza v. UAG Escondido A1 Inc*., Case No.: 23cv0102 DMS(KSC), 2024 WL 559241, at *3 (S.D. Cal. Feb. 12, 2024) (recognizing split among district court).  "A pleading standard to the contrary would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorder."  *D'Angelo v. Penny OpCo, LLC*, No. 23-CV-0981-BAS-DDL, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023).

The complaint alleges that when Plaintiff selected a medical condition and entered her PII and PHI into Defendant's website, Google Analytics' tracking code and TikTok Pixel sent a simultaneous transmission of her information to Google and TikTok.  (*See* Dkt. No. 1, Compl. ¶¶ 34, 54.)  In addition, it asserts that Google and TikTok intercepted Plaintiff's PII and PHI in real time as she entered the information onto the website.  (*Id*. ¶¶ 38, 56.)  The Court concludes that Plaintiff has alleged more than a conclusory allegation and has plausibly alleged that her communications were intercepted while "in transit."  *See Esparza*, 2024 WL 559241, at *3.

### e.    Fourth Clause – Aiding and Abetting

Finally, Defendant asserts that Plaintiff has failed to plead an aiding and abetting claim against it because she has not pleaded that Google Analytics and TikTok violated the first, second or third clauses of Penal Code section 631(a) because all allegations concern its actions and not the conduct of Google or TikTok.  (Dkt. No. 10-1 at 28.)

Further, Defendant maintains that because it uses Google and TikTok as an advertising tool to improve communications with its visitors, Google and TikTok are parties to the communications as facilitators.  (*Id.* at 28.)  Plaintiff responds that the complaint is filled with a plethora of allegations of how Google and TikTok use their technology to intercept Plaintiff's PII and PHI to aid Defendant but also for their own benefit.  (Dkt. No. 13 at 23-24.)  In addition, Plaintiff claims that recent district court decisions have held that a defendant can be derivatively liable for eavesdropping even if it is done for the benefit of the party to the conversation.  (*Id.* at 25.)

The fourth clause of section 631(a) imposes liability against anyone who aids another in violating any of the first three clauses.  *See* Cal. Penal Code § 631(a).  Here, Plaintiff claims it is alleging a violation of the second and third clauses.  (Dkt. No. 13 at 21 n.2.)  "[W]hile a party to a communication may record the communication without triggering § 631(a) liability, it will be subject to derivative liability where the third party is liable for recording the communications in violation of the first, second or third clauses of § 631(a)."  *Martin* v, *Sephora USA, Inc.*, Case No. 1:22-cv-01355-JLT-SAB, 2023 WL 2717636, at *12 (citation omitted).

In one case involving the party exception, the Ninth Circuit held that Facebook was not a party to communications between a user and a third-party website that was accessed by Facebook through its plug-in software, and was not exempted from liability under CIPA.  *In re Facebook, Inc.*, 956 F.3d at 608.  Specifically, on third party websites with Facebook plug-ins, Facebook's code directed the user's browser to copy a header containing a user's personally identifiable URL information and sent a separate, simultaneous but identical request to Facebook's server.  *Id.* at 607.  This allowed Facebook to compile users' browsing histories for its own purposes.  *Id.*  The Ninth Circuit concluded that "unknown duplication and communication of" information in this manner "do[es] not exempt a defendant from liability under the party exception." *Id.* at 608.  The court reasoned that "[p]ermitting an entity to engage in the unauthorized

duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion, allowing the exception to swallow the rule." *Id.*

In conducting an analysis on third party liability under CIPA, district courts look to two California state court: *Ribas v. Clark*, 38 Cal. 3d 355 (1985), and *Rogers v. Ulrich*, 52 Cal. App. 3d 894 (1975). In *Rogers*, Ulrich used a tape recorder attached to his telephone to record his phone call with Rogers, and then later played that recording for a third party who was not involved in the call. *Id.* at 897-98. The California court of appeal held that Ulrich's use of a tape-recording device did not violate section 631(a)'s restriction on eavesdropping because he was a party to the call, noting that "only a third party can listen secretly to a private conversation." *Id.* at 899; *see Ribas*, 38 Cal. 3d at 360 n.3 ("*Rogers* merely held, correctly, that section 631 does not penalize the secret recording of a conversation by one of the *participants*.").

In contrast to *Rogers*, in *Ribas*, the plaintiff had reached a divorce settlement agreement with his wife who did not have counsel. 38 Cal. 3d at 358. After she consulted with an attorney and learned of the negative tax consequences of the settlement agreement, she informed the plaintiff who then had a heated conversation with her attorney. *Id.* The wife then used the telephone of Clark, a third party, and asked Clark to listen in live on her phone call as the husband allegedly confessed that he had prevented his wife from obtaining counsel during the dissolution proceedings of their marriage. *Id.* The California Supreme Court held that Clark's conduct violated section 631(a) because the statute draws a distinction between "the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device." *Id.* at 360-61 (citation omitted). The Court wrote that "such secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements." *Id.* at 361.

The question here is whether Google and TikTok are third-party eavesdroppers engaged in simultaneous listening in as in *Ribas*, or whether their conduct is equivalent of

a tape-recorder used to record a conversation which is later played back to a third party, as in *Rogers*.

The complaint alleges Defendant violated CIPA by aiding and assisting Google and TikTok to simultaneously to track, intercept and receive patients' PII and PHI through its website. (Dkt. No. 1, Compl. ¶¶ 2, 6, 75-77, 79.) Plaintiff alleges Defendant intentionally embedded and installed Google Analytics and TikTok Pixel on its website where users enter PII and PHI. (*Id*. ¶¶ 33, 52.) Google and TikTok intercepted, in real time, Plaintiff's PII and PHI, processed and assembled that information into data sets for purposes of advertising. (*Id*. ¶ 56.) The Court finds that Plaintiff's allegations are akin to the conduct in *Ribas* because Plaintiff alleges that Google and TikTok intercepted communications in real time, or in other words, they simultaneously listened in on the communications between Plaintiff and Defendant.

Defendant argues that Google and TikTok are not third party eavesdroppers because Defendant engages Google and TikTok's software for Defendant's own purposes relying on *Graham v. Noom, Inc*., 533 F. Supp. 3d 823, 831–32 (N.D. Cal. 2021) and *Licea v. Vitacost.com, Inc.*, 683 F. Supp. 3d 1118, 1123 (S.D. Cal. 2023). (Dkt. No. 10-1 at 28; Dkt. No. 16 at 9.) In *Graham* and *Licea*, the district courts held that "a website owner that engages a vendor to record website-based communications for the website owner's own purposes is not thereby aiding and abetting eavesdropping by a third party in violation of Section 631(a)." *Licea,* 683 F. Supp. 3d at 1123 (citing *Graham*, 533 F. Supp. 3d at 832-33 ("[A]s a service provider, [third-party vendor] is an extension of [Defendant]. It provides a tool – like a tape recorder . . . that allows [Defendant] to record and analyze its own data in aid of [Defendant's] business. It is not a third-party eavesdropper. As a result, [Defendant] is not liable for aiding and abetting [vendor's] wrongdoing because there is no wrongdoing.")[6]

---

[6] The Court recognizes that district courts disagree with the analysis in *Graham*. *See Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949, 954 (E.D. Cal. 2025) ("… there is a split amongst district courts

Unlike the plaintiffs' allegations in *Graham* and *Licea*, Plaintiff present facts that Google and TikTok use her intercepted communication for purposes other than just to benefit Defendant.  The complaint alleges that once the PII and PHI are intercepted, Google and TikTok views each and every piece of intercepted information.  (Dkt. No. 1, Compl. ¶¶ 38, 56.)  Google aggregates the intercepted information with information from all sites containing Google Analytics that are tracking users across many websites and platforms which it then uses as a service offered to other companies.  (*Id.* ¶ 41.)  The complaint further alleges that TikTok eavesdrops on extracted information through TikTok Pixel and analyzes intercepted information before it is provided to any entity.  (*Id.* ¶ 49.)  It claims that TikTok has the ability to use the intercepted information for its own purposes to develop new business products and services, and also aggregates intercepted information with data collected from other websites that can be used to offer to other companies seeking targeted advertising.  (*Id.* ¶ 50.)  Plaintiff has alleged that Google and TikTok use and/or has the capability to use the intercepted communications for purposes other than to furnish information to Defendant.

At this stage, the Court concludes that Plaintiff has alleged Google and TikTok are third party eavesdroppers, and Defendant can be subject to liability for aiding them in eavesdropping under clause four of section 631(a).

### 3.    CMIA, Cal. Civ. Code section 56.10(a)

Plaintiff alleges violations of two provisions of the CMIA: section 56.10 and section 56.36(b) of the California Civil Code.  (Dkt. No. 1, Compl. ¶¶ 18-19, 90.)

CMIA prohibits the unauthorized disclosure of medical information and the negligent release or disclosure of medical information.  Cal. Civ. Code § 56.10(a)

---

as to whether a third-party entity must actually use the data it obtains for its own purposes or if it merely needs to have the capability to do so to act as a third party in violation of section 631(a).”); *Yockey v. Salesforce*, 688 F. Supp. 3d 962, 972-73 (N.D. Cal. 2023) (discussing different positions of the district courts); *Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 979-81 (C.D. Cal. 2023) (“This Court disagrees with the reasoning of *Graham*”).  The Court need not address the contention because Plaintiff has alleged that Google and TikTok are third party eavesdropper under both standards.

("provider of health care . . . shall not disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization . . . ."), § 56.36(b) ("an individual may bring an action against a person or entity who has negligently released confidential information or records concerning him or her in violation of this part").  "The CMIA is a remedial statute" subject to liberal interpretation to advance its purpose.  *J.W. v. Illuminate Educ., Inc.*, 103 Cal. App. 5th 1125, 1132 (2024), *review granted*, 326 Cal. Rptr. 3d 440 (2024).

### a.    Conduct in California

Defendant again argues that Plaintiff has not alleged she was in California when she accessed Defendant's website.  (Dkt. No. 10-1 at 29.)  As concluded above, Plaintiff has not alleged she was in California when she sought treatment on Defendant's website. Therefore, the Court GRANTS Defendant's motion to dismiss the CMIA claim based on this argument.

### b.    Provider of Healthcare

Under CMIA, a provider of healthcare is defined as

(a) Any business organized for the purpose of maintaining medical information in order to make the information available to an individual or to a provider of health care at the request of the individual or a provider of health care, for purposes of allowing the individual to manage the individual's information, or for the diagnosis and treatment of the individual, shall be deemed to be a provider of health care subject to the requirements of this part. . . . .

(b) Any business that offers software or hardware to consumers, including a mobile application or other related device that is designed to maintain medical information in order to make the information available to an individual or a provider of health care at the request of the individual or a provider of health care, for purposes of allowing the individual to manage the individual's information, or for the diagnosis, treatment, or management of a medical condition of the individual, shall be deemed to be a provider of health care subject to the requirements of this part.

Cal. Civ. Code § 56.06.

Defendant contends that it is not a provider of healthcare because it is not "organized for the purpose of maintaining medical information" as defined under section 56.06(a), and does not "offer[ ] software or hardware to consumers . . . that is designed to maintain medical information" as defined under section 56.06(b).  (Dkt. No. 10-1 at 29-30.)  Plaintiff disagrees relying on section 56.06(b) claiming that Defendant's website is software that is "designed to maintain medical information" by way of telehealth appointments and medical tests which are used for "diagnosis, treatment [and] management of a medical condition."  (Dkt. No. 13 at 26.)

Under section 56.06(b), a provider of healthcare offers software which includes a "mobile application or other related device that is designed to maintain information  . . . for the diagnosis, treatment, or management of a medical condition of the individual." Cal. Civ. Code § 56.06(b).  Here, the complaint alleges that Defendant is a provider of health care because "it maintains medical information and offers software to consumers that is designed to maintain medical information for the purpose of allowing its users to manage their information of make the information available to a healthcare provider, or for the diagnosis, treatment, or management of a medical condition. . . ."  (Dkt. No. 1, Compl. ¶ 83.)  It also alleges that TikTok Pixel is a package of "prebuilt software tools." (*Id.* ¶ 45.)

The cases relied on by Defendant are not supportive because in those cases, the plaintiff made one conclusory allegation.  *See Oddei v. ScanSTAT Tech., LLC*, No. 22-55035, 2022 WL 17538747, at *1 (9th Cir. Dec. 8, 2022) (unpublished) (affirming grant of dismissal because there was "only the conclusory statement that ScanSTAT provides 'software or hardware' for consumers."); *Oddei v. Optum, Inc*., Case No.: 2:21-cv-03974-SB-MRW, 2021 WL 6333467, at *2 (C.D. Cal. Dec. 3, 2021) (sole allegation that "ScanSTAT is a provider of health care pursuant to Section 56.06(b) because it is a business that 'offer[s] software or hardware to consumers in order to make medical information available at the request of the individual'" was insufficient to state a claim).

At this stage of the proceedings, the Court concludes that Plaintiff alleges sufficient facts to support the claim that Defendant is a provider of healthcare as defined under section 56.06(b).  The Court DENIES Defendant's motion to dismiss based on this argument.

### c.    Medical Information

Defendant again contends that Plaintiff failed to plead the disclosure of her medical information.  (Dkt. No. 10-1 at 30.)

The CMIA defines "medical information" as "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care, health care service plan, pharmaceutical company, or contractor regarding a patient's medical history, mental or physical condition, or treatment." Cal. Civ. Code § 56.05(j) (emphasis added). Further, a "patient" is defined as "any natural person...who received health care services from a provider of healthcare and to whom medical information pertains." *Id.* § 56.05(k).

As discussed above, Plaintiff has plausibly alleged, by reasonable inferences, that she disclosed her medical condition as well as her PII and PHI when she sought treatment on Defendant's website.  Accordingly, the Court DENIES Defendant's motion to dismiss on this basis.

### d.    Negligent Release and Disclosure of Medical Information

Lastly, Defendant argues that the CMIA claim for the negligent release or disclosure of medical information fails to state a claim.  (Dkt. No. 10-1 at 33.)  Plaintiff does not oppose.  (*See* Dkt. No. 13.)  Section 56.36 allows an individual may bring an action for damages against an entity that has negligently released or disclosed confidential information or records.  Cal. Civ. Code § 56.36(b).  Accordingly, the Court GRANTS Defendant's motion to dismiss the negligent release or disclosure of medical information claim under the CMIA as unopposed.

/ / /

/ / /

/ / /

1

2

### 4.    California Constitution's Right to Privacy/Common Law Intrusion Upon Seclusion

3

"The right to privacy in the California Constitution sets standards similar to the

4

common law tort of intrusion." *Hernandez v. Hillsides, Inc*., 47 Cal. 4th 272, 287 (2009).

5

To allege a claim under Article I, Section 1 of the California Constitution, a plaintiff must

6

allege (1) a legally protected privacy interest, (2) a reasonable expectation of privacy by

7

the plaintiff, and (3) a serious invasion of privacy interest. *Hill v. Nat'l Collegiate*

8

*Athletic Ass'n*, 7 Cal. 4th 1, 35-37 (1994). Moreover, an intrusion upon seclusion claim

9

has two elements: "(1) intrusion into a private place, conversation or matter, (2) in a

10

manner highly offensive to a reasonable person.*"* *Taus v. Loftus*, 40 Cal. 4th 683, 725

11

(2007) (quoting *Shulman v. Grp. W Prods*., *Inc.,* 18 Cal. 4th 200, 231 (1988)).

12

### a.    Conduct in California

13

Defendant maintains that the invasion of privacy claim fails because Plaintiff does

14

not allege that any conduct took place in California. (Dkt. No. 10-1 at 35.) As discussed

15

above, because Plaintiff does not allege any conduct occurred in California, the Court

16

GRANTS Defendant's motion to dismiss on this issue.

17

### b.    Contents of Personal Information

18

Second, Call-On-Doc argues that the privacy claims fail because Plaintiff does not

19

allege what specific personal information was disclosed to show a serious invasion of

20

privacy interest or an intrusion that is highly offensive. (Dkt. No. 10-1 at 35.)

21

All persons have a legally protected privacy interest in their medical records as

22

well as a reasonable expectation of privacy. *See Hill*, 7 Cal. 4th at 35 ("Legally

23

recognized privacy interests [include] interests in precluding the dissemination or misuse

24

of sensitive and confidential information."); *In re Ambry Genetics Data Breach Litig*.,

25

567 F.Supp.3d 1130, 1143 (C.D. Cal. 2021) ("a data breach involved medical

26

information, because the disclosure of such information is more likely to constitute an

27

'egregious breach of the social norms' that is "highly offensive."); *Bd. of Med. Quality*

28

*Assurance v. Gherardini*, 93 Cal. App. 3d 669, 678 (1979) ("A person's medical profile is

an area of privacy infinitely more intimate, more personal in quality and nature than many areas already judicially recognized and protected.); *Heldt v. Guardian Life Ins. Co. of Am.*, Case No. 16-cv-885-BAS-NLS, 2019 WL 651503, at *4 (S.D. Cal. Feb. 15, 2019) (recognizing a legally protected privacy interest in medical information held by an insurer).

As seen above, Plaintiff has alleged that she disclosed her PII as well as her PHI including her medical condition and information as to her symptoms, dates of exposure, medication and surgical history which sufficiently identifies specific personal information to show a serious invasion of privacy interest or an intrusion that is highly offensive. (Dkt. No. 1, Compl. ¶¶ 23, 25.) As such, the Court DENIES dismissal on this basis.

### c.    Intrusion by Defendant

Finally, Defendant argues there was no "intrusion" by it because Plaintiff willingly shared her personal and medical information. (Dkt. No. 10-1 at 35.) Plaintiff disagrees. (Dkt. No. 30.)

For an intrusion upon seclusion, "the defendant must intentionally intrude into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy." *Hernandez*, 47 Cal. 4th 272 at 286. While Plaintiff voluntarily shared her personal and medical information with Defendant, she alleges Defendant intentionally disclosed her medical information with Google and TikTok by intercepting it. (Dkt. No. 1, Compl. ¶¶ 2, 6, 36, 56.) Plaintiff plausibly alleges an intrusion upon seclusion claim, and the Court DENIES Defendant's motion to dismiss on this ground.

In sum, the Court GRANTS in part and DENIES in part Defendant's motion to dismiss the CIPA and CMIA causes of action.

/ / /

/ / /

/ / /

/ / /

**D.    Motion to Compel Compliance with Rule 10(a)[7]**

Defendant moves to compel compliance with Rule 10(a) requiring Plaintiff Jane Doe to proceed under her full name.  (Dkt. No. 11-1.)  Plaintiff opposes.  (Dkt. No. 14.)

**1.    Legal Standard**

Rule 10(a) states that "[t]he title of the complaint must name all the parties."  Fed. R. Civ. P. 10(a).  "The default presumption is that the plaintiffs will use their true names."  *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1046 (9th Cir. 2010).  "The identity of the parties in any action, civil or criminal, should not be concealed except in an unusual case, where there is a need for the cloak of anonymity."  *United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1980).  This unusual case arises "[w]here it is necessary . . . to protect a person from harassment, injury, ridicule or personal embarrassment."  *Id.*

A party may proceed under a pseudonym "when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity," such as when necessary "to protect a person from harassment, injury, ridicule, or personal embarrassment."  *Does I thru XXIII v. Advanced Textile Corp*., 214 F.3d 1058, 1068 (9th Cir. 2000) (citations omitted).  The Ninth Circuit has recognized that courts have allowed anonymity "when anonymity is necessary to 'preserve privacy in a matter of a sensitive and highly personal nature.'"  *Does I thru XXIII v. Advanced Textile Corp.,* 214 F.3d 1058, 1068 (9th Cir. 2000) (citations omitted).

"The most compelling situations [in which plaintiffs are allowed to proceed anonymously] involve matters which are highly sensitive, such as social stigmatization, real danger of physical harm, or where the injury litigated against would occur as a result

---

[7] While Defendant names its motion as a motion to compel compliance with Rule 10, it relies on Rule 41(b) as the legal standard to apply which would dictate a motion to dismiss for failing to comply with Rule 10.  Because Defendant does not move to dismiss but instead moves to compel, the Court addresses its motion as one to compel compliance with Rule 10(a).  *See Doe v. Epic Games, Inc*., 435 F. Supp. 3d 1024, 1053 (N.D. Cal. 2020) (addressing motion to compel compliance with Rule 10(a)).

of the disclosure of the plaintiff's identity." *Doe v. Rostker*, 89 F.R.D. 158, 162 (N.D. Cal. 1981). "That the plaintiff may suffer some embarrassment or economic harm is not enough." *Id.* Similarly, in *Doe v. John F Kennedy Univ.*, No. 13–cv–01137–DMR, 2013 WL 4565061, at *3 (N.D. Cal. Aug. 27, 2013), the court concluded that "[l]earning disabilities such as ADHD are not uncommon, nor are they freighted with the high risk of stigmatization that has been deemed sufficient to allow plaintiffs to proceed under fictitious names."

### 2. Analysis

Defendant moves to compel Plaintiff to identify her full name because there is no threatened severe harm to justify anonymity and it will be prejudiced by its ability to investigate and defend this class action, and there is a strong interest in knowing Plaintiff's identity since she is a class representative. (Dkt. No. 11-1 at 4-6.) Plaintiff simply responds that during this litigation she will likely be required to disclose her sensitive and protected health information related to her treatment, and if disclosed, she may be subject to ridicule and personal embarrassment. (Dkt. No. 14 at 3.) She also argues there is no prejudice to Defendant because she will provide her name in discovery under seal. (*Id.* at 4.)

Plaintiff has neither articulated nor presented any evidence to support her alleged fear of personal embarrassment due to the disclosure of her medical condition. In addition, the disclosure of one's medical condition does not justify proceeding anonymously. *See Roe v. Skillz, Inc.,* 858 F. App'x 240, 241-42 (9th Cir. 2021) (affirming denial of pseudonym motion where plaintiff offered only "conclusory and general statements without explanation or support" regarding her compulsive gambling and the impact on her mental health, her suicidal ideations, and personal harms); *Roe v. State Bar of Cal.,* No. SA CV 22-00983-DFM, 2023 WL 6193023 (C.D. Cal. Mar. 17, 2023) (denying request to proceed anonymously because declarations did not state that the unspecified medical conditions would be highly stigmatizing to them)*; E.L. v. Scottsdale Healthcare Corp. Health Plan*, No. 2:11-CV-00271-REJ, 2011 WL 1748548,

at *1 (D. Ariz. May 6, 2011) ("Disclosure of medical records is part and parcel of judicial proceedings in many types of litigation . . . That [plaintiff's] medical records might include embarrassing or private information is not unusual and does not justify the secrecy of anonymity."). Finally, Plaintiff relies on cases where a party was proceeding under a pseudonym, but the court did not address and the parties did not raise whether that party can proceed anonymously. (*See* Dkt. No. 14 at 2.)

On the other hand, the public has a "common law right of access to judicial proceedings", *Advanced Textile*, 214 F.3d at 1067, creating a presumption that a plaintiff will use their names. *Kamehameha Sch./Bernice Pauahi Bishop Est.*, 596 F.3d at 1046. Plaintiff does not address the public interest factor and as such, has not rebutted the presumption to proceed under her full name. Lastly, because Plaintiff has failed to offer any evidence or argument showing that her need for anonymity outweighs the public interest, the court may compel her compliance with Rule 10 even if there is no identifiable prejudice to Defendant. *See Skillz, Inc*., 858 F. App'x at 242 (affirming denial of the plaintiff to proceed anonymously even if no prejudice to defendant).

Balancing the factors, the Court finds that the need for anonymity does not outweigh any prejudice to Defendant and the public interest. Accordingly, the Court GRANTS Defendant's motion to compel compliance with Rule 10(a).

**E.    Leave to Amend**

While Plaintiff does not seek leave to amend, leave to amend should be freely granted when it would not be futile. Therefore, the Court GRANTS Plaintiff leave to file an amended complaint to correct the deficiencies noted above. *See Chubb*, 710 F.3d at 956.

/ / /

/ / /

/ / /

/ / /

/ / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Conclusion**

Based on the above, the Court GRANTS in part and DENIES in part Defendant's motion to dismiss with leave to amend. The Court also GRANTS Defendant's motion to compel compliance with Rule 10(a).  Plaintiff shall file an amended complaint within 14 days of the Court's order.

IT IS SO ORDERED.

Dated:  June 13, 2025

Hon. Gonzalo P. Curiel
United States District Judge

24cv2095-GPC(KSC)